SILVER OIL COMPANY, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Silver Oil Co. *v.* Limbach (1989), 44 Ohio St. 3d 120.]

(No. 88-262—Submitted May 9, 1989—Decided July 26, 1989.)

*Dennis M. Carson* and *Mariann Yevin,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard C. Farrin,* for appellee.

*Per Curiam.* Under R.C. 5739.01 (E)(2), transactions in which the purpose of the consumer is to "* * * use or consume the thing transferred * * * directly in making retail sales * * *" are excepted from the definition of "retail sale" and, thus, from the sales tax.

During the audit period, "making retail sales" was defined in R.C. 5739.01(P) (now [O]) as:

"* * * [T]he effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to transfer title to or possession of the item sold, but it does not include the delivery of items thereafter nor the preliminary acts of promoting or soliciting the retail sales, other than the distribution of printed matter which displays or describes and prices the item offered for sale."

"Vendor" is defined in R.C. 5739.01(C) as:

"* * * [T]he person by whom the transfer effected or license given by a sale is or is to be made or given * * *."

Thus, it must be the purpose of the purchaser, under R.C. 5739.01(E)(2), to use the item directly in making retail sales for the item to be excepted. Moreover, pursuant to *San-A-Pure Dairy Co.* v. *Bowers* (1962), 173 Ohio St. 469, 472, 20 O.O. 2d 103, 104, 183 N.E. 2d 918, 920, and *Coca-Cola Bottling Corp.* v. *Kosydar* (1975), 43 Ohio St. 2d 186, 189, 72 O.O. 2d 104, 105-106, 331 N.E. 2d 440, 442, the vendor, the person who makes the retail sale, must also be the purchaser of the equipment that is used directly in making the retail sale.

Silver Oil argues that it is both the vendor here and the purchaser of the equipment at issue. In support, it points to the BTA's finding that Silver Oil is a retailer of gasoline that sold gasoline through self-serve gasoline pumps, Silver Oil's ownership and control over the equipment and inventory, its responsibility for the equipment, and its liability for damage by the equipment. The commissioner maintains that Silver Oil was not engaged in making retail sales because it sold gasoline on consignment to the convenience stores, which, she argues, in turn sold the gasoline at retail.

The *San-A-Pure Dairy Co.* and *Coca-Cola Corp.* cases which held that the direct-use exception did not apply are distinguishable.

In *San-A-Pure Dairy Co.,* the taxpayer produced and sold packaged ice cream at wholesale to retailers. The retailers sold the ice cream to their customers. The taxpayer purchased cases or cabinets to hold the ice cream without paying tax. The taxpayer fur-

nished the equipment to retailers to store and display the taxpayer's ice cream. The taxpayer maintained the equipment, stocked ice cream, and sometimes arranged the ice cream in the cabinets, removing dated or spoiled ice cream.

The court held that the cases were used directly in making retail sales, but that the retailer, not the taxpayer, used the equipment. According to the court, the taxpayer sold ice cream at wholesale and expected payment of the wholesale price by the retailer. The retailer actually made the retail sale, and the cabinets were not excepted because the retailer did not purchase them.

In *Coca-Cola Corp.*, the taxpayer bottled soft drinks and distributed them to retailers. The taxpayer purchased dispensing equipment and provided it to drug stores and soda fountains at no charge. The taxpayer also loaned, at no charge, concession stands, trailers, coolers, and other dispensing items to others for special events. These items were used by the transferees to sell taxpayer's product.

The court, citing *San-A-Pure Dairy Co.*, held that the taxpayer sold the soft drinks at wholesale, and the retailer sold the product at retail. Since the retailer used the equipment directly in making retail sales, the taxpayer, who purchased the equipment, could not stand in the retailer's shoes and claim exception.

In the instant case, however, Silver Oil provided the equipment and inventory. It did not sell the gasoline to the convenience stores. Silver Oil owned the gasoline until it was sold to the customers, and the convenience stores and Silver Oil shared the profits. This is unlike the wholesale operations in *San-A-Pure Dairy Co.* and *Coca-Cola Corp.*[2]

Under the facts in this case, we hold that the instant parties' relationship was a joint venture.

According to R.C. 5739.01(A), for purposes of the sales tax, "person" includes a joint venture. Thus, a vendor may be a joint venture. In *Al Johnson Constr. Co.* v. *Kosydar* (1975), 42 Ohio St. 2d 29, 71 O.O. 2d 16, 325 N.E. 2d 549, paragraph one of the syllabus, we defined a "joint venture":

"A joint venture is '* * * an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as

---

[2] Moreover, *Tresler Oil Co.* v. *Kosydar* (Dec. 27, 1976), Hamilton App. No. C-75150, unreported, cited by the commissioner, is also distinguishable. *Tresler Oil* involved sales to dealers under consignment agreements. Tresler transferred equipment to the dealer, and the dealer maintained the equipment and dispensed Tresler's petroleum products. According to the court of appeals, the dealer used the equipment directly in making retail sales and not Tresler, the equipment's purchaser. Unlike Tresler, Silver Oil itself maintained the equipment and kept track of the inventory. Silver, unlike Tresler, carried liability insurance. In *Tresler Oil,* the parties did not share the profits; the dealer subtracted the agreed price to be paid Tresler from the retail price, and the remainder was the dealer's profit. Finally, Tresler's sales were not self-serve. The dealer hired employees to pump and collect for the gasoline and was otherwise in complete control of his business. *Tresler Oil Co.* v. *Kosydar* (Feb. 26, 1975), BTA No. C-120, at 17-18.

agent, as to each of the other co-adventurers * * *.' (Paragraph one of the syllabus in *Ford* v. *McCue* [(1955),] 163 Ohio St. 498, [56 O.O. 410, 127 N.E. 2d 209] approved and followed.)"

In *Ford,* the court discussed some of the indicia of a joint venture. The parties must agree to engage in a specific business enterprise that does not rise to the level of a partnership. The parties must also manifest their intent to be joint venturers. The parties are not joint venturers unless there is a common interest in the purpose of the undertaking and equal right or authority to direct and govern the movements and the conduct of each other. The parties in a joint venture function as both principal and agent to each other. Furthermore, the parties must divide profits and losses. According to the court, the major distinction between a joint venture and a partnership is that a joint venture relates to a single enterprise and a partnership relates to a continuing business. *Id.* at 502-503, 56 O.O. at 412-413, 127 N.E. 2d at 212-213. See, also, *Bennett* v. *Sinclair Refining Co.* (1944), 144 Ohio St. 139, 29 O.O. 223, 57 N.E. 2d 776.

Here, Silver Oil and the convenience stores agreed to make retail sales of gasoline at the stores' locations. Silver Oil provided the equipment and inventory, while the stores monitored, and collected money for, the sales. They shared the profits. Losses were not specifically shared. Nevertheless, if a gasoline war occurred and a loss resulted, each store had to provide personnel at its expense. Since this expense was not reimbursable under the agreement, the arrangement between Silver Oil and the stores was tantamount to sharing the loss. Silver Oil and the convenience stores, consequently, were engaged in a joint venture to sell gasoline at retail.

Furthermore, the lack of a vendor's license at each location where Silver Oil conducted business, required under R.C. 5739.17, is not fatal. We make no statement as to the culpability of Silver Oil, and note that R.C. 5739.99 provides penalties for violating R.C. 5739.17. We further note that Silver Oil reported gross sales totalling $81,627,170.55 under its Hamilton County license and that 93.28 percent of those sales was tax exempt. Nevertheless, it remitted $261,338.19 in sales tax to Ohio. Moreover, the commissioner apparently does not challenge these returns.

R.C. 5739.17 requires a vendor to apply for a vendor's license for each retail location. Yet, making a retail sale without such license for each location does not excuse the vendor from collecting the tax, and it should not disqualify the vendor from receiving an exception under R.C. 5739.01(E)(2).

Accordingly, the BTA's decision is unreasonable and unlawful and is, hereby, reversed.

*Decision reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.