Steven Andrews and Cynthia Shealey appeal from a summary judgment entered in favor of the defendants, Alabama Eye Bank ("Eye Bank") and Paul Cau. We affirm.
The plaintiffs' 11-year-old son died at George H. Lanier Memorial Hospital following an asthma attack. Shortly after his death, a nurse at the hospital asked the mother if she would be willing to donate her son's corneas. The mother says she told the nurse that it did not matter to her. The hospital thereupon contacted the Eye Bank and left a message with the Eye Bank's answering service concerning a potential donor. Cau, an employee of the Eye Bank, returned the call and spoke with a different nurse at the hospital; that nurse said he was in the process of obtaining consent from the decedent's mother, via telephone. Cau sent a consent form to the nurse via facsimile. Cau said that after waiting 20 minutes he called the nurse a second time and the nurse told him that he had obtained consent from the decedent's mother. At that point, Cau told the nurse that he was on his way to the hospital. Upon arriving at the hospital, Cau made a notation on the consent form, which was signed by the two nurses as witnesses; the notation indicated that consent had been obtained from the decedent's mother via telephone. Cau proceeded to remove the corneas and took them back to the Eye Bank to be used for donation.
Sometime after the telephone conversation between the child's mother and the nurse, and after the mother had left the hospital, the child's father arrived at the hospital; he refused to sign the consent form. It is unclear from the record whether the father's refusal was made before or after the corneas were actually removed.
The parents sued the hospital, certain employees of the hospital, the Eye Bank, and Cau, alleging that the defendants acted negligently and outrageously in harvesting their son's corneas for an organ donation. All of the defendants moved for a summary judgment. The trial court entered a summary judgment in favor of the Eye Bank and Cau, on the basis that the Eye Bank and Cau had acted in good faith and had no liability, relying on the Uniform Anatomical Gift Act ("UAGA"), as codified at §22-19-40 et seq., Ala. Code 1975. The trial court stated that liability, if any, rests solely with the hospital, which had undertaken to obtain the consent. The court made the summary judgment final, pursuant to Rule 54(b), Ala. R. Civ. P. The plaintiffs appealed.
On appeal from a summary judgment, we must determine whether the evidence creates a genuine issue of material fact and whether the trial court erred in applying the law. Ex parte Lumpkin,702 So.2d 462 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990).
When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as *Page 64 
a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Flordia,547 So.2d 870, 871 (Ala. 1989).
The UAGA outlines the means of effecting an anatomical gift, the persons who may make such a gift, and the circumstances under which the gift must be deemed invalid. In Lyon v. United States,843 F. Supp. 531 (D.Minn. 1994), the court explained the purpose of the UAGA:
 "The Uniform Anatomical Gift Act is clearly designed to balance two competing policy interests. There is the need for donations of eyes and other organs for transplantation and research purposes. Time is usually of the essence in securing donated organs at the time of the donor's death. The Act allows hospitals and physicians to ascertain with a high degree of certainty when someone is willing to donate organs, and to arrange for the prompt removal and preservation of donated organs. The Act also recognizes the religious and moral sensibilities of those who do not wish to donate organs. The Act does not compel organ donations nor does it establish a presumption that organs will be donated. The good faith exception to civil and criminal liability is designed for situations . . . where because of confusion, an organ is removed without genuine consent."
Id. at 536.
This case turns on the interpretation of the good-faith immunity provisions of the UAGA as applied to the Eye Bank and Cau. Section 22-19-47(c), Ala. Code 1975, states: "A person who acts in good faith in accord with the terms of this article [i.e., the UAGA] or with the anatomical gift laws of another state or a foreign country is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his act." The plaintiffs contend that whether the Eye Bank and Cau acted in good faith is a question of fact for a jury. They specifically argue that these defendants' failure to investigate and independently verify the hospital's representation that consent had been obtained from the mother creates a question of fact for a jury regarding whether they acted in good faith. The trial court concluded that although there are disputed facts as to exactly what occurred at the hospital, none of the disputes is material to the resolution of the liability of the Eye Bank, which is a wholly separate entity, and its agent, Cau. We agree.
The trial court noted that under § 22-19-42, Ala. Code 1975, either parent may consent to an organ gift and either parent can prevent the gift by a timely protest. However, the trial court stated that this provision is not applicable in determining the liability of the Eye Bank because §§ 22-19-44
and -45 place no responsibility on the donee with regard to consent and it is undisputed that the hospital communicated to the Eye Bank its understanding that an effective gift had been consummated. One mode of executing a gift is stated in §22-19-44(e): "Any gift by a person designated in subsection (b) of Section 22-19-42 shall be made by a document signed by him or made by his telegraphic, recorded telephonic or other recorded message." The trial court concluded that, as a matter of law, the donee in this case, Cau acting on behalf of the Eye Bank, must be found to have acted in good faith, because there was no evidence that the donee knew that the telephone conversation had not been recorded (if that is the case) or that there had been a retraction of the gift and, therefore, that the gift had not been effective. The trial court correctly concluded that the donee has as an absolute right to rely on the representation of the hospital.
While this Court has not before today considered the "good-faith" immunity provisions of the UAGA, courts of other states have discussed the good-faith immunity provisions of their state laws, as well as of the UAGA, and have concluded that whether a particular action is to be taken as a display of good faith is a question of law, properly to be *Page 65 
resolved on summary judgment. See Rahman v. Mayo Clinic,578 N.W.2d 802 (Minn.App. 1998), and Nicoletta v. Rochester Eye Human Parts Bank, Inc., 136 Misc.2d 1065, 519 N.Y.S.2d 928 (Sup. Ct. 1987). The Minnesota and New York versions of the UAGA read substantially similar to Alabama's enactment of the UAGA with regard to the "good faith" provision. See Minn. Stat. §525.9221(c) and New York Pub. Health Law § 4306(3). Those jurisdictions have adopted an objective standard by which the "good faith" required of the donee can be defined, for example, as an "honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage."Nicoletta, supra, 136 Misc.2d at 1067-68, 519 N.Y.S.2d at 930, citing Black's Law Dictionary (5th ed. 1979). We adopt this definition for purposes of the "good faith" provisions of the UAGA.
As a general proposition, questions concerning the state of mind a person had when he performed a particular act are unsuited for resolution on a motion for summary judgment. See Loveless v.Graddick, 295 Ala. 142, 325 So.2d 137 (Ala. 1975) (dealing with malice in an action alleging defamation). See, also,Riley-Stabler Const. Co. v. Westinghouse Electric Corp.,396 F.2d 274 (5th Cir. 1968), cited by the Court of Civil Appeals inS T Bunn Construction Co. v. Cataphote, Inc., 621 So.2d 1325
(Ala.Civ.App. 1993), and holding that a question of good faith generally cannot be decided on a motion for summary judgment. In each of those cases, the court had to determine whether a defendant had conformed to a "standard of conduct required by law," and that determination could more properly be made by a factfinder after a trial on the case. 396 F.2d at 277.
The question here presented is whether the legislature's express delineation of a course of conduct a donee is to pursue constitutes a legislative declaration that one following that course of conduct will be considered to have acted in good faith; if so, then the facts take this present case outside the general rule. We conclude that it does. The UAGA, unlike previous cases dealing with whether one has acted in good faith, establishes a definitive standard by which to judge a donee's conduct.Nicoletta, supra, 136 Misc.2d at 1068-69,519 N.Y.S.2d at 930-31. Section 22-19-44, Ala. Code 1975, sets forth the modes of making an anatomical gift:
 "(b) A gift of all or part of the body under subsection (a) of Section 22-19-42 may also be made by document other than a will. The gift becomes effective upon the death of the donor. The document, which may be a card designed to be carried on the person, must be signed by the donor in the presence of two witnesses, who must sign the document in his presence. If the donor cannot sign, the document may be signed for him at his direction and in his presence and in the presence of two witnesses, who must sign the document in his presence. Delivery of the document of gift during the donor's lifetime is not necessary to make the gift valid.
". . . .
 "(e) Any gift by a person designated in subsection (b) of Section 22-19-42 shall be made by a document signed by him or made by his telegraphic, recorded telephonic or other recorded message."
Section 22-19-47, Ala. Code 1975, sets out the powers, duties, and liabilities others may have upon the death of the donor and it also contains this provision:
 "(c) A person who acts in good faith in accord with the terms of this article or with the anatomical gift laws of another state or a foreign country is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his act."
Had there been an issue as to whether the conduct prescribed by the statute had been performed, a different situation would be presented. The evidence indicates that an agent of the Eye Bank removed the eyes of the decedent, in justified reliance on the permission form, which was handed to him at the hospital and which appeared to comply with the requirements of § 22-19-44, in that it was a document witnessed by two nurses at the hospital and, although it was not signed by the next of kin, it represented that the mother had given her consent by *Page 66 
telephone. The record contains no evidence indicating that the Eye Bank had actual notice that the decedent's mother had not given her consent, as the hospital's nurses represented, or that the mother had rescinded the gift before the corneas were harvested. The record requires a conclusion that Cau and the Eye Bank acted in "good faith," within the meaning of that term as it is used in the UAGA, when they removed the decedent's corneas in justified reliance on the consent purportedly obtained by the hospital's nurses via telephone.
Because Cau and the Eye Bank are entitled to immunity under the UAGA, we affirm the summary judgment.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, COOK, and SEE, JJ., concur.