2008 ME 9

**Alice GEARY**

v.

**The STANLEY MEDICAL RESEARCH INSTITUTE et al.**

**James Allen**

v.

**The Stanley Medical Research Institute et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 25, 2007.

Decided: Jan. 15, 2008.

Mark G. Lavoie, Esq., Christopher C. Taintor, Esq., Norman, Hanson & DeTroy, LLC, Thomas V. Laprade, Esq., Portland, ME, for the appellants.

Craig J. Rancourt, Esq., Law Offices of Craig J. Rancourt, Biddeford, ME, C. Donald Briggs, III, Briggs & Counsel, Rockport, ME, for the appellees.

Steven D. Silin, Esq., Robert H. Furbish, Esq., Berman & Simmons, P.A., Lewiston, ME, for amici curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] In these separate but similar cases, the Stanley Medical Research Institute and Dr. E. Fuller Torrey, its executive director at the time these cases arose (collectively referred to as SMRI), appeal from decisions of the Superior Court (Waldo County and Cumberland County, *Mills, J.*) granting SMRI's motions for summary judgment in part and denying them in part. Matthew Cyr and Lorie Stevens (collectively referred to as Cyr unless otherwise noted) in each case filed a combined motion for summary judgment pursuant to M.R. Civ. P. 56, and motion to dismiss pursuant to M.R. Civ. P. 12(b)(6). They appeal from the Superior Court's denial in part of their motions to dismiss.[1]

[¶ 2] SMRI and Cyr principally argue that the trial court erred in denying parts of their dispositive motions because they are immune from suit pursuant to the good faith provision of the Uniform Anatomical Gift Act (UAGA), 22 M.R.S. § 2907(3) (2007). Alice Geary moves to dismiss SMRI and Cyr's appeals pursuant to M.R.App. P. 4(d); the motion has been consolidated with these appeals. Because we conclude that no exception to the final

---

1. The Superior Court treated the combined motions as motions for summary judgment. M.R. Civ. P. 12(c).

judgment rule applies, we dismiss these interlocutory appeals.

## I. FACTS AND PROCEDURE

### A. Alice Geary

[¶ 3] The Stanley Medical Research Institute is a nonprofit trust that supports research on the causes and treatment of schizophrenia and bipolar disorder. It maintains a brain collection to provide researchers with brain tissue in support of that mission.

[¶ 4] In April 2000, Raymond Geary Jr., Alice Geary's husband, died. Geary's complaint alleges that on the night of her husband's death, and again the next day, someone called asking her to donate his organs. She says she refused the requests. At that time Matthew Cyr, who in the past had overseen brain donations in Maine for the New England Eye and Tissue Transplant Bank, was being paid $1000 by SMRI for each brain he collected.[2] Lorie Stevens lived with Cyr. Geary claims that Cyr, using documents witnessed by Stevens, falsely told the Medical Examiner's Office prior to her husband's autopsy that she had consented to the donation of his brain. As a result, Raymond Geary's brain was sent to SMRI. Cyr denies Geary's allegations.

[¶ 5] Geary filed a seven-count complaint in the Superior Court,[3] alleging:

Count I: Violations of the Uniform Anatomical Gift Act

Count II: Negligence

Count III: Interference With and Mutilation of a Corpse

Count IV: Negligent, Reckless or Intentional Misrepresentation

Count V: Reckless or Intentional Infliction of Emotional Distress

Count VI: Negligent Infliction of Emotional Distress

Count VII: Conversion

[¶ 6] SMRI moved for summary judgment on all counts, as did Stevens. Cyr moved for summary judgment on some counts and for dismissal on others. The Superior Court entered orders granting the motions in part. As to all of the defendants, the court granted summary judgment on Counts I, IV, and VII. It denied the motions on Counts II, III, V, and VI.

### B. James Allen

[¶ 7] In August 2001, Carol Allen, James Allen's wife, drowned in her swimming pool. The complaint alleges that Allen was contacted by Cyr, who asked for permission to obtain brain tissue from his wife for research. Allen says that he agreed to donate a small sample after Cyr told him the procedure would involve only a small incision and no disfigurement. He claims that Cyr then executed a false consent form, witnessed by Stevens, purportedly authorizing the Medical Examiner's Office to remove his wife's entire brain and certain other organs. Her organs were then sent to SMRI.

[¶ 8] Allen filed an eight-count complaint in the Superior Court, alleging:

Count I: Tortious Interference With a Dead Body

Count II: Negligent Interference With a Dead Body

Count III: Intentional or Reckless Violation of the UAGA

---

2. In August 2001, Cyr's compensation was changed to $1000 per month as a retainer, plus $1000 per brain collected.

3. This case came before us previously when Geary attempted to add an additional defendant to her complaint. *Geary v. Stanley,* 2007 ME 133, 931 A.2d 1064.

Count IV: Negligence and Negligent Violation of the UAGA

Count V: Fraudulent Misrepresentation

Count VI: Negligent Misrepresentation

Count VII: Intentional Infliction of Emotional Distress

Count VIII: Negligent Infliction of Emotional Distress

[¶ 9] SMRI moved for summary judgment on all counts. Cyr and Stevens moved for dismissal of some counts and for summary judgment on the remainder. The Superior Court entered orders as to all defendants granting summary judgment on Count III and on Count IV insofar as it alleged a negligent violation of the UAGA. It denied summary judgment on Counts I, II, IV (insofar as it alleged ordinary negligence), V, VI, VII, and VIII.[4]

## II. DISCUSSION

[¶ 10] It is well-established that "[w]e review only final judgments and not interlocutory orders, absent an exception to the final judgment rule." *Dep't of Agric. v. Ouellette*, 2007 ME 117, ¶ 7, 930 A.2d 1037, 1038. The rule serves several important interests, as it: "prevents piecemeal litigation, and helps curtail interruption, delay, duplication and harassment; it minimizes interference with the trial process; it serves the goal of judicial economy; and it saves the appellate court from deciding issues which may ultimately be mooted . . . ." *Griswold v. Town of Denmark*, 2007 ME 93, ¶ 16, 927 A.2d 410, 417

(citation omitted). An interlocutory appeal from the denial of a motion for summary judgment is generally barred by the final judgment rule because the trial court has not yet "fully decide[d] and dispose[d] of the entire matter pending before [it]." *Ouellette*, 2007 ME 117, ¶ 7, 930 A.2d at 1039 (quotation marks omitted); *see also Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 16, 922 A.2d 484, 489.

[¶ 11] SMRI's appeals are interlocutory; therefore the final judgment rule requires that we dismiss them unless an exception applies. Of the three exceptions we have recognized, only the so-called "death knell" exception has any potential application here.[5] *See U.S. Dep't of Agric., Rural Hous. Serv. v. Carter*, 2002 ME 103, ¶ 7, 799 A.2d 1232, 1234. That exception "permits an appeal from an interlocutory order where substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Webb v. Haas*, 1999 ME 74, ¶ 5, 728 A.2d 1261, 1264 (quotation marks omitted). When a statute grants a party immunity, it "confers more than immunity from damages; it is intended to provide immunity from suit . . . ." *Id.* (quotation marks omitted). For that reason, the denial of a motion for summary judgment that is based on a claim of immunity is immediately reviewable under the death knell exception. *Id.*; *Rodriguez*, 2007 ME 68, ¶ 16, 922 A.2d at 489.

---

**4.** The court limited damages on Counts V and VI to a maximum of $35.52, which was the amount Allen spent on a phone card to call the Maine Attorney General's Office from Florida to check on the situation involving his wife's body.

**5.** The two other recognized exceptions to the final judgment rule are inapplicable. The collateral order exception does not apply because the decision as to whether SMRI and

Cyr acted in good faith when dealing with Geary and Allen is the central dispute in this case, not "a claim separable from the gravamen of the litigation." *USDA v. Carter*, 2002 ME 103, ¶ 8, 799 A.2d 1232, 1234. The judicial economy exception does not apply because only a decision in SMRI and Cyr's favor would dispose of the entire case. *Id.* ¶ 13, 799 A.2d at 1236.

■ [¶ 12] SMRI and Cyr contend that they enjoy statutory immunity conferred by Maine's version of the UAGA, and so their interlocutory appeals should be heard. The Act provides that:

A person who acts in good faith in accord with the terms of this chapter, or under the anatomical gift laws of another state or a foreign country, is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his act.

22 M.R.S. § 2907(3).

[¶ 13] Geary and Allen argue that the statute provides a defense to a civil action, not immunity from it, and so SMRI's premature appeals should be dismissed. In this case of first impression in Maine, we conclude that while the good faith clause of the UAGA can potentially be dispositive on a motion for summary judgment, it does not confer immunity from suit. Accordingly, we dismiss these interlocutory appeals.

■ [¶ 14] When interpreting a statute, our starting point and ultimate purpose is to give effect to the intent of the Legislature. *Foley v. Verizon*, 2007 ME 128, ¶ 10, 931 A.2d 1058, 1061. In the limited cases where we have recognized statutory immunities and subsequently entertained interlocutory appeals, that intent has been clear. For example, we have recognized the immunities provided by the Maine Tort Claims Act, 14 M.R.S. §§ 8101–8118 (2007). *See, e.g., Rodriguez*, 2007 ME 68, 922 A.2d 484. There, the Legislature's intent to provide immunity from suit is unmistakable:

1. **Immunity.** Except as otherwise expressly provided by statute, all governmental entities *shall be immune from suit* on any and all tort claims seeking recovery of damages. *When immunity is removed* by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter.

14 M.R.S. § 8103 (emphasis added). Immunity can also be conferred by explicit reference to the MTCA. *See Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 14, 845 A.2d 1178, 1181.

[¶ 15] Likewise, we have heard immediate appeals from the denial of summary judgment in cases involving the Maine Workers' Compensation Act, 39–A M.R.S. §§ 101–909 (2007). *See, e.g., Marcoux v. Parker Hannifin*, 2005 ME 107, ¶ 5 n. 1, 881 A.2d 1138, 1141. There, the legislative intent to provide immunity is also clear:

An employer who has secured the payment of compensation in conformity with sections 401 to 407 [of the Act] *is exempt from civil actions*, either at common law or under [statute], involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries. An employer that uses a private employment agency for temporary help services *is entitled to the same immunity from civil actions* . . . .

39–A M.R.S. § 104 (emphasis added).

[¶ 16] In cases brought under 42 U.S.C. § 1983,[6] we recognize a qualified immunity because the core value of the death knell exception is implicated, namely that "substantial rights of a party will be

<hr>

6. The statute provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C.S. § 1983 (2002).

irreparably lost if review is delayed until final judgment." *Webb*, 1999 ME 74, ¶ 5, 728 A.2d at 1264 (quotation marks omitted). When a government official is sued, "even such pretrial matters as discovery . . . can be peculiarly disruptive of efficient government." *Id.* (quotation marks omitted).

[¶ 17] The United States Supreme Court has said that recognition of qualified immunity under section 1983 is "based not simply on the existence of a good faith defense at common law, but on the special policy concerns involved in suing government officials. Reviewing these concerns, we conclude that the rationales mandating qualified immunity for public officials are not applicable to private parties." *Wyatt v. Cole*, 504 U.S. 158, 167, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (citations omitted). The Court pointed out that "unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes." *Id.* at 168, 112 S.Ct. 1827.

[¶ 18] The good faith clause of the UAGA does not explicitly provide immunity from suit, nor is there any suggestion that qualified immunity is involved in this dispute between private parties. In the absence of a clear grant of immunity, we have held that the death knell exception applies only:

> if the appellant would not have an effective remedy if the interlocutory determination were to be vacated after a final disposition of the entire litigation. The fact that a delay will involve some harm to the appellant is not sufficient to constitute an "irreparable loss" when the harm will last only for the duration of the litigation and is temporary.

*Carter*, 2002 ME 103, ¶ 12, 799 A.2d at 1235–36 (citations omitted). SMRI and Cyr have effective remedies remaining; they may be found not liable by the factfinder at trial based on a good faith defense, and if not, their right to appeal after a final judgment is entered, contending that they are shielded by the UAGA as a matter of law, remains fully viable. Since the death knell exception to the final judgment rule does not apply, these appeals must be dismissed.

[¶ 19] This is not to say that the Act's good faith provision is of no import beyond providing a potential defense at trial. Other courts interpreting various formulations of the UAGA[7] have concluded that an assertion of good faith may be dispositive on a motion for summary judgment.[8]

7. The uniform act is far from uniform in practice. Three versions of the UAGA have been promulgated. The 1968 and 1987 versions have been adopted in roughly equal numbers by the states, and many states have modified their chosen version. A revised version of the UAGA was proposed in 2006 by the National Conference of Commissioners on Uniform State Laws because "The law among the various states is no longer uniform and harmonious. . . ." REVISED UNIF. ANATOMICAL GIFT ACT (2006) prefatory note, 8A U.L.A. 2 (Supp. 2007).

8. *See, e.g., Perry v. St. Francis Hosp.*, 886 F.Supp. 1551, 1559 (D.Kan.1995) (finding a genuine issue of fact existed and noting that, "Nothing in its history suggests that UAGA was intended to cutoff liability when physicians or hospitals knowingly or recklessly mislead family donors. . . ."); *Lyon v. United States*, 843 F.Supp. 531 (D.Minn.1994); *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 972 P.2d 658 (Ct.App.1998); *Carey v. New Engl. Organ Bank*, 446 Mass. 270, 843 N.E.2d 1070 (2006); *Kelly–Nevils v. Detroit Receiving Hosp.*, 207 Mich.App. 410, 526 N.W.2d 15 (1994); *Rahman v. Mayo Clinic*, 578 N.W.2d 802 (Minn.Ct.App.1998); *Schembre v. Mid–America Transplant Ass'n*, 135 S.W.3d 527 (Mo.Ct.App.2004); *Nicoletta v. Rochester Eye & Human Parts Bank, Inc.*, 136 Misc.2d 1065, 519 N.Y.S.2d 928 (N.Y.Sup.Ct. 1987); *Brown v. Del. Valley Transplant Pro-*

In *Andrews v. Alabama Eye Bank*, 727 So.2d 62 (Ala.1999), the Supreme Court of Alabama considered a case where an eye bank representative removed a child's corneas after two nurses at the hospital where the child died signed a consent form saying that the mother had agreed to the donation by telephone. 727 So.2d at 63. Interpreting essentially the same language found in 22 M.R.S. § 2907(3), the court affirmed the entry of summary judgment for the eye bank based on the UAGA's good faith clause. *Id.* at 63–64.

[¶ 20] The *Andrews* court recognized that, "[a]s a general proposition, questions concerning the state of mind a person had when he performed a particular act are unsuited for resolution on a motion for summary judgment." *Id.* at 65. However, the court found the UAGA to be a special case:

> The question here presented is whether the legislature's express delineation of a course of conduct a donee is to pursue constitutes a legislative declaration that one following that course of conduct will be considered to have acted in good faith; if so, then the facts take this present case outside the general rule. We conclude that it does. The UAGA, unlike previous cases dealing with whether one has acted in good faith, establishes a definitive standard by which to judge a donee's conduct.
>
> *Id.*

[¶ 21] We find this logic to be persuasive. The purpose of the good faith clause is to shield donees from liability in situations where "because of confusion, an organ is removed without genuine consent." [9] *Lyon v. United States*, 843 F.Supp. 531, 536 (D.Minn.1994). The touchstone for invoking that protection is compliance with the requirements of the UAGA. If the record on summary judgment, which may be established by unopposed or admitted statements of fact, stipulations, requests for admission, answers to interrogatories, etc., reveals no genuine issue of material fact concerning compliance with the UAGA's requirements, then summary judgment should be entered for the party asserting good faith. If a court applying this standard finds that summary judgment is inappropriate, then the good faith provision is available as a defense at trial, and the party asserting it may endeavor to prove compliance with the UAGA to the fact-finder.

[¶ 22] In denying full summary judgment in these cases, the Superior Court found that genuine issues exist concerning whether SMRI, Cyr and Stevens acted in good faith, and whether Cyr and Stevens

---

*gram*, 420 Pa.Super. 84, 615 A.2d 1379 (1992) (but dissent argued good faith is a question of fact); *Hinze v. Baptist Mem'l Hosp.*, 1990 WL 121138, 1990 Tenn.App. Lexis 601 (Tenn.Ct. App.1990); *Seamans v. Harris County Hosp. Dist.*, 934 S.W.2d 393 (Tex.App.1996); *Sattler v. Nw. Tissue Ctr.*, 110 Wash.App. 689, 42 P.3d 440 (2002) (denying summary judgment after finding issue of material fact concerning good faith). *But see Williams v. Hofmann*, 66 Wis.2d 145, 223 N.W.2d 844 (1974) (holding that good faith under UAGA is a factual defense which must be proved at trial).

9. In granting SMRI's motion for summary judgment in part in Allen's case, the Superior Court cited a definition of "good faith" articulated by the Supreme Court of New York in *Nicoletta v. Rochester Eye & Human Parts Bank, Inc.*, 136 Misc.2d 1065, 519 N.Y.S.2d 928 (N.Y.Sup.Ct.1987). That court said, "Good faith is defined as an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage." *Id.* at 930 (quotation marks omitted). The *Nicoletta* definition has been widely cited by courts construing the UAGA. *See, e.g., Lyon*, 843 F.Supp. at 533; *Perry*, 886 F.Supp. at 1558; *Andrews*, 727 So.2d at 65; *Carey*, 843 N.E.2d at 1082; *Schembre*, 135 S.W.3d at 532 (collecting cases).

acted as SMRI's agents.[10] It is evident from the pleadings and the record on appeal that a key requirement of the UAGA, that being proper consent to an organ donation, is also the central issue remaining for trial. Geary and Allen do not allege confusion, they allege fraud. That is not an issue that can be resolved on a motion for summary judgment.

The entry is:

Appeals dismissed; remanded to the Superior Court for further proceedings.

10. SMRI argues that it is immune under the UAGA regardless of Cyr and Stevens's conduct. A research or organ transplant organization could prevail on a motion for summary judgment, notwithstanding an error by a non-agent hospital or some other entity in the donation chain, if there is no genuine issue of material fact concerning the organization's own compliance with the Act. Because the motion court found that a factual question remains as to whether Cyr and Stevens acted as SMRI's agents, there is also a genuine issue as to whether SMRI complied with the UAGA's requirements. *See Peoples Heritage Sav. Bank v. Pease,* 2002 ME 82, ¶ 20, 797 A.2d 1270, 1276 (existence of an agency relationship is a question of fact).