[Cite as *Siegel v. Lifecenter Organ Donor Network*, 2011-Ohio-6031.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

DANIEL SIEGEL,                            :          APPEAL NO.  C-100777
                                                     TRIAL NO.    A-0802827
   and                            :
                                                     *O P I N I O N.*
FRANCES B. SIEGEL, Individually and       :
as administratrix of the Estate of
Jessica Ann Siegel,                       :

   Plaintiffs-Appellants,         :

   vs.                            :

LIFECENTER      ORGAN      DONOR          :
NETWORK,
                                          :
LYNNE BEBEE,
                                          :
CINCINNATI EYE BANK,
                                          :
   and                            :

DONNA J. SCHRUFFENBERGER,                 :

   Defendants-Appellees.

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part and Cause
                             Remanded

Date of Judgment Entry on Appeal:  November 23, 2011

*John H. Metz,* for Plaintiffs-Appellants,

*Rick L. Weil,* for Defendant-Appellee LifeCenter Organ Donor Network,

*Graydon, Head & Ritchey, LLP*, and *Harry J. Finke IV* for Defendants-Appellees Cincinnati Eye Bank and Donna Schruffenberger.

Please note: This case has been removed from the accelerated calendar.

SYLVIA S. HENDON, **Judge.**

{¶1}   Plaintiffs-appellants Daniel and Frances Siegel appeal from the trial court's entry of summary judgment in favor of defendants-appellees LifeCenter Organ Donor Network ("LifeCenter"), Lynne Beebe, the Cincinnati Eye Bank ("Eye Bank"), and Donna J. Schruffenberger. For the following reasons, we reverse the trial court's judgment in favor of LifeCenter and Beebe on the state law claims. We affirm in all other respects.

### Facts

{¶2}   Jessica Ann Siegel was sixteen years old when she died unexpectedly of complications following surgery. Within hours of her death and shortly before midnight, LifeCenter employee Lynne Beebe telephoned Jessica's father, Daniel Siegel, at home asking if he would consent to donating Jessica's organs. This conversation was recorded and is in the record on appeal. According to Beebe's deposition testimony, she believed that Daniel had consented to the removal of Jessica's organs during this call. She therefore had completed a consent form to this effect with Daniel over the telephone. Daniel testified that he had not consented.

{¶3}   Shortly after finishing the conversation with Daniel, Beebe faxed the completed consent form to Donna Schruffenberger at the Eye Bank. Based on the consent form, Schruffenberger removed Jessica's eyes.

{¶4}   This lawsuit followed. The Siegels sued defendants-appellees for conversion, assault, battery, desecration of a corpse, interference with the right of

sepulcher, mental anguish, and emotional distress. They also asserted a civil rights violation.

{¶5}    Following extensive discovery and motion practice, defendants-appellees moved the trial court for summary judgment. The trial court entered judgment in favor of all the defendants-appellees as to all counts on the basis of the "good faith" exception to civil liability contained in R.C. 2108.20. The trial court also overruled various other motions that the Siegels had filed. The Siegels now appeal.

## I. Summary Judgment in Favor of LifeCenter

{¶6}    In the Siegels' first assignment of error, they claim that the trial court erred in granting summary judgment in favor of LifeCenter. The Siegels are correct as to the state law claims, only.

{¶7}    Our standard of review is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Summary judgment is appropriate only if, after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Civ.R. 56; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 364 N.E.2d 267. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95, 604 N.E.2d 138.

{¶8}    The trial court granted summary judgment to LifeCenter based on the "good faith" exception to liability in R.C. 2108.20. At the time of Jessica's death in 2006, however, the "good faith" exception was contained in former R.C. 2108.08. Former R.C. 2108.08 provided that "[a] person who in good faith acts, or attempts to act, in accordance with sections 2108.01 to 2108.12, 2108.15, 2108.17, and 2108.18 of

the Revised Code, or the anatomical gift laws of another state, is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his act." The code sections delineated in former R.C. 2108.08 were collectively referred to as the Uniform Anatomical Gift Act ("UAGA"). In relevant part, the UAGA controlled who could consent to organ donation and how.

{¶9} The question presented here is whether there is a genuine issue of fact concerning whether LifeCenter and Beebe acted in good faith when attempting to obtain Daniel's consent.

### "Good Faith"

{¶10} Ohio courts have not adopted a definition of "good faith" under Ohio's UAGA. But other jurisdictions have addressed the meaning of "good faith" contained in similar anatomical-gift-act statutes. See *Nicoletta v. Rochester Eye and Human Parts Bank, Inc.* (1987), 136 Misc.2d 1065, 1068, 519 N.Y.S.2d 928; *Schembre v. MidAmerica Transplant Assn.* (Mo. 2004), 135 S.W.3d 527, 532; *Lyon v. United States* (D.Minn. 1994), 843 F.Supp. 531, 533; *Ramirez v. Health Partners of S. Ariz.* (1998), 193 Ariz. 325, 972 P.2d 658, ¶15; *Kelly-Nevils v. Detroit Receiving Hosp.* (1994), 207 Mich. App. 410, 526 N.W.2d 15; *Rahman v. Mayo Clinic* (Minn. 1998), 578 N.W.2d 802, 805; *Andrews v. Ala. Eye Bank* (Ala. 1999), 727 So.2d 62. All of these courts have cited with approval the Black's Law Dictionary (5th Ed., 1979) 623 definition of "good faith," i.e., "an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage."

{¶11} In the interest of uniformity, we adopt this definition as well. See former R.C 2108.09 (uniformity among the states is a goal of the UAGA). But we note that this definition applies only to those cases brought under the former law. In

2009, Ohio adopted a second Uniform Anatomical Gift Act, the "UAGA 2." Under current law, the legislature has indicated that good faith means "honesty-in-fact" or "honesty-of-intent," and is to be determined under a subjective standard. See official comment to R.C. 2108.20. Under former R.C. 2108.08, the question of good faith is determined under an objective standard. See id.

### The Conversation Between Beebe and Daniel

{¶12} The Siegels first assert that the conversation between Daniel and Beebe creates an issue of whether the good-faith exception to liability applies in this case.

{¶13}  When Beebe spoke with Daniel on the night of Jessica's death, Bebee referred to herself as an "afterlife specialist," and told Daniel that "there is a very good chance that Jessica could be a hero * * * through the gift of donation."  Beebe explained that Jessica's organs, bones, skin, and her connective tissue could be used to "really change the lives of several families that are in need right now," and asked him, "is that the kind of gift that you would like to honor your daughter Jessica with?"  Daniel replied, "Ah, yes it would."  Beebe then read Daniel a consent form. But she failed to read the first sentence that stated "I hereby make this anatomical gift from the body parts of Jessica Siegel who died on 8/23/06 in Cincinnati, Ohio." Beebe also did not read the consent form's footnote.  The footnote stated "Consent for bone of the lower body includes: hemi pelvis, tibia, fibula, femur and iliac crest, talus, patella, fascia, soft tissue."

{¶14}  After reading most of the consent form to Daniel, Beebe explained that Jessica's organs could be donated or could be used for medical and educational purposes. She asked if Daniel would "like to authorize both of those priorities."

Daniel's response was inaudible. Beebe then told Daniel that "the final step in the donation process is the completion of a medical-social behavioral risk questionnaire that is mandated by the Food and Drug Administration before the tissues can be transplanted. It takes about 15 minutes; we do it right over the phone * * *" Daniel responded, "I don't know if I really want to do that right now." So Beebe agreed to call Daniel back the next morning around 10:00 or 11:00. She also told Daniel that "we will go ahead and start the recovery process, we just won't be able to transplant until that interview." Daniel responded, "No problem. Okay." Beebe later testified that "the recovery process" referred to the harvesting of organs prior to transplantation, but she did not tell Daniel this during their conversation.

{¶15} Beebe called Daniel back at 8:05 a.m., two hours earlier than expected. Daniel told her that he needed to get his wife's "permission on everything." Beebe called again at 9:22 a.m., and Daniel informed Beebe that they did not wish to donate.

## Questions of Fact

{¶16} The Siegels claim that the type of language used by Beebe such as "afterlife specialist," "hero," and "honor," and Beebe's failure to read the complete consent form raise a question of whether Beebe had exercised "good faith" in her dealings with Daniel. They also argue that the use of the conditional "would" in the question "Is this the type of gift that you *would* like to honor your daughter Jessica with?" intentionally conveyed a hypothetical question, only. The Siegels further contend that Beebe's representation that there was "a final step in the donation process" had communicated that nothing would happen until this last step was

completed. Finally, the Siegels allege that the fact that there had been no definition of "recovery process" in the conversation was also indicative of a lack of good faith.

{¶17} Aside from the recorded conversation between Daniel and Beebe, the Siegels point to conversations between Beebe and hospital personnel following Jessica's death, the timing of the telephone calls to Daniel, other recorded phone calls by LifeCenter employees pertaining to procuring Jessica's organs, and the training that LifeCenter employees receive as evidence that LifeCenter and Beebe had not acted in good faith.

{¶18} In response, LifeCenter essentially contends that the recorded telephone conversation between Daniel and Beebe is dispositive of the issue of good faith. LifeCenter argues that summary judgment was properly entered because it appeared that Daniel had consented to the removal of Jessica's eyes after Beebe had completed the consent form with Daniel over the telephone.

{¶19} Based on the arguments and evidence presented, we are convinced that there remains an issue of fact concerning whether LifeCenter and Beebe had acted in good faith when attempting to secure Daniel's consent. Daniel's statements cannot be viewed in a vacuum. Instead, we find that "all facts and circumstances reasonably applicable" to the issue of good faith should be put before a jury. See *Netzley v. Nationwide Mut. Ins. Co.* (1971), 34 Ohio App.2d 65, 75, 296 N.E.2d 550.

{¶20} But we sustain the Siegels first assignment of error in part, only. For reasons detailed below, we find that the trial court properly entered judgment in favor of LifeCenter on the Siegels' civil rights claim. The balance of the trial court's judgment in favor of LifeCenter and Beebe, however, is reversed.

## II. Summary Judgment In Favor of the Eye Bank and Schruffenberger

{¶21}  In their sixth assignment of error, the Siegels argue that the trial court erred in granting summary judgment in favor of the Eye Bank and Donna Schruffenberger on their state-law claims.  This argument has no merit.

### Good Faith Exception Applied

{¶22} The Eye Bank's involvement in this case began when Donna Schruffenberger received a facially valid consent form from LifeCenter and Beebe. The consent form appeared to comply with former R.C. 2108.04(E)(3), which allowed for consent via the telephone.  The Siegels have presented no evidence that the Eye Bank and Schruffenberger had reason to doubt the legitimacy of this document.  Since there was no evidence to create a "genuine issue of fact" concerning whether these parties relied on the document in good faith, we find that the trial court correctly concluded that the "good faith" exception to liability in former R.C. 2108.08 applied. See *Andrews*, supra; *Rahman,* supra; *Lyon,* supra; *Nicoletta*, supra.

### No Joint Venture

{¶23}  The Siegels' claim, however, that the Eye Bank should nevertheless be held liable under an agency theory because it operated a joint venture with LifeCenter. Not so.  Among other requirements, a joint venture does not exist unless the parties share in profits and losses, and have an equal right to direct each others' conduct.  *Silver Oil Co. v. Limbach* (1989), 44 Ohio St.3d 120, 123, 541 N.E.2d 612;

see, also, *Ford v. McCue* (1955), 163 Ohio St. 498, 127 N.E.2d 209; *Heritage Oldsmobile Cadillac v. Fifth Third Bank* (Oct. 10, 1990), 1st Dist. No. C-890370. Here, the Eye Bank produced an affidavit from its executive director, Beth Binnion, stating that the Eye Bank and LifeCenter do not share these characteristics. The Siegels offered no evidence to the contrary

{¶24} The Siegels' sixth assignment of error is overruled.

### III. The Civil-Rights Claims

{¶25} In their third assignment of error, the Siegels allege that their civil-rights claims against LifeCenter and the Eye Bank should have survived summary judgment. They are incorrect.

{¶26} To prevail on a Section 1983, Title 42, U.S. Code ("Section 1983") claim, a plaintiff must prove: (1) that the conduct in controversy was committed by a person acting under color of state law and (2) that the conduct deprived plaintiff of a federal constitutional or statutory right. *Parratt v. Taylor* (1981), 451 U.S. 527, 535, 101 S.Ct. 1908, overruled in part on other grounds in *Daniels v. Williams* (1986), 474 U.S. 327, 330-331, 106 S.Ct. 662; *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456.

{¶27} The Siegels first argue that LifeCenter was acting under color of state law because LifeCenter is licensed and regulated by the Department of Health and Human Services. It is well-settled that government licensure or regulation of a private entity, alone, does not transform that entity into a state actor. *Rendell Baker v. Kohn* (1982), 457 U.S. 830, 102 S.Ct. 2764; *Blum v. Yaretsky* (1982), 457 U.S. 991, 102 S.Ct. 2777. This argument has no merit.

{¶28} In regard to the Eye Bank, the Siegels cite *Brotherton v. Cleveland* (C.A.6, 1992), Slip Op No. 91-3316, as establishing that eye banks, in general, are state actors. That was not the holding of *Brotherton*. *Brotherton* involved an appeal from a dismissal under Fed.R.Civ.P. 12(B)(6). In that case, the court held that the defendant eye bank was potentially liable under Section 1983 because the eye bank's challenged actions were allegedly closely intertwined with the Hamilton County Coroner, a state actor, so that the two parties could be deemed to be acting in concert. In the instant case, there was no entanglement with a state actor and *Brotherton* is distinguishable.

{¶29} We hold that summary judgment was properly entered in favor of LifeCenter and the Eye Bank on the civil rights claims. The Siegels' third assignment of error is overruled.

## IV. The Statute is Constitutional

{¶30} In their second assignment of error, the Siegels contend that former R.C 2108.08 was (1) void for vagueness; and (2) violated the Equal Protection Clauses of the United States and Ohio Constitutions. Neither argument has merit.

### R.C. 2721.12(A) is Inapplicable

{¶31} Defendants-appellees assert that this court is without jurisdiction over this constitutional claim pursuant to R.C. 2721.12(A). R.C. 2721.12(A) requires a party challenging the constitutionality of a statute in a declaratory judgment action to serve a copy of its complaint on the attorney general. Without service, a court has no jurisdiction to determine the claim. But that code section does not apply where, as here, the constitutionality of a statute is challenged in a civil action for damages. *Cleveland Bar Assn. v. Picklo*, 96 Ohio St.3d 195, 2002-Ohio-3995, 772 N.E.2d 1187;

see, also, *Pinchot v. Charter One Bank, F.S.B.,* 99 Ohio St.3d 390, 2003-Ohio-4122, 792 N.E.2d 1105, ¶6, fn. 1; *Thorp v. Strigari*, 155 Ohio App.3d 245, 2003-Ohio-5954, 800 N.E.2d 392, ¶12. We therefore have jurisdiction to address the merits of the Siegels' argument.

## Presumption of Constitutionality

{¶32} All statutes are presumed to be constitutional. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 128 N.E.2d 59, paragraph one of the syllabus; *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 274, 503 N.E.2d 717. The party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute and a constitutional provision are incompatible. *Defenbacher*, supra; *State v. Warner* (1990), 55 Ohio St.3d 31, 43, 564 N.E.2d 18. The Siegels have failed to do so.

## Void For Vagueness Doctrine

{¶33} A statute is void for vagueness unless it (1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence, and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement. *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶84, citing *Kolender v. Lawson* (1983), 461 U.S. 352, 357, 103 S.Ct. 1855. This determination "must be made in light of the facts presented in the given case and the nature of the enactment challenged." Id., citing *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 495, 102 S.Ct. 1186. Regulations that are directed to economic matters and impose civil penalties are subject to a "less strict" vagueness test, but if the enactment is directed towards a constitutionally protected right, a more stringent vagueness test applies. *Hoffman Estates,* 455 U.S.

11

at 498-499, 102 S.Ct. 1186. The "less strict/more stringent" standards have never been precisely enunciated. *Horney* at ¶85, 853 N.E.2d 115. But the critical question under either standard "is whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law * * *." Id. at ¶86, citing *Rockford v. Grayned* (1972), 408 U.S. 104, 108-109, 92 S.Ct. 2294; *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 92 S.Ct. 839.

{¶34} The Siegels allege that former R.C. 2108.08 interferes with their right to a jury trial under the United States and Ohio Constitutions. But there is nothing in that code section that precludes a defendant from trying a case to a jury. The question of "good faith" can be litigated. We therefore find that a "less strict vagueness test" is mandated. But even under a more stringent review, the Siegels fail to demonstrate how former R.C. 2108.08 is unconstitutional.

{¶35} The Siegels make conclusory allegations that the phrases "in accordance with," and "anatomical gift laws of another state," are unconstitutionally vague. They provide no supporting analysis for these claims. So, the Siegels have not met their burden to demonstrate how these terms render the statute unconstitutional.

{¶36} The Siegels also contend that the term "good faith" makes the statute void for vagueness because there is no clear standard of what "good faith" entails in the context of the UAGA. As discussed above, "good faith" must be determined in light of all relevant circumstances. It therefore does not lend itself to a precise definition applicable to every conceivable situation. Given Black's Law Dictionary's definition and the existence of case law adopting that definition in the context of

other, similar uniform gift acts, we find that the Siegels cannot demonstrate that former R.C. 2108.08 is unconstitutionally vague. See *Connally v. General Constr. Co.* (1926), 269 U.S. 385, 391-392, 46 S.Ct. 126 (a statute is not void-for-vagueness where there exists a common-law meaning for an ambiguous term.) This argument has no merit.

## Equal Protection

{¶37} The Siegels next claim that former R.C. 2108.08 violated the Equal Protection Clauses of the Ohio and United States Constitutions because it provided special privileges and immunities to a select class. We hold that there was no violation.

{¶38} The standard for determining whether a statute violates equal protection is the same under both the United States and Ohio Constitutions. *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 60, 1999-Ohio-248, 717 N.E.2d 286; *Beatty v. Akron City Hospital* (1981), 67 Ohio St. 2d 483, 491, 424 N.E.2d 586. Unless a classification warrants heightened review because it jeopardizes the exercise of a fundamental right or because it categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clauses require only that the classification rationally further a legitimate state interest. *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶39; *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, citing *Clements v. Fashing* (1982), 457 U.S. 957, 963, 73, 102 S.Ct. 2836. Analysis of whether a state interest is served may be based on reasonable speculation unsupported by evidence or empirical data. *Am. Assn. of Univ. Professors*, 87 Ohio St.3d at 58, 1999-Ohio-248, 717 N.E.2d 286.

{¶39} The Siegels have not demonstrated grounds for a heightened review. Therefore, the rational-basis test applies. We grant substantial deference to the legislature when applying an equal-protection rational-basis test. *Williams,* at ¶40.

{¶40} Former R.C. 2108.08 was enacted to encourage the procurement of anatomical gifts. That is a valid state interest because organ donation is related to the health and welfare of Ohio's citizens. See *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 110, 146 N.E.2d 854. And the "good faith" provision of former R.C. 2108.08 was rationally related to attaining this goal. Providing protection from criminal prosecution or civil liability to those who act in good faith in accordance with the UAGA supports the goal of organ donation.

{¶41} The Siegels' second assignment of error is overruled.

## V. Striking of Affidavits

{¶42} In their fourth assignment of error, the Siegels contend that the trial court erred by striking the affidavits of Ebony Craddieth and Kimyotta Fernanders, both former LifeCenter employees. This argument has no merit.

{¶43} Although it is not entirely clear, the Siegels appear to argue that the trial court should have considered Craddieth's and Fernanders' affidavits when ruling on LifeCenter's motion for summary judgment. Under Civ.R. 56(E), an affidavit must be made on personal knowledge and must "set forth such facts as would be admissible in evidence." Further, the affidavit must "show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). An affidavit that does not meet these requirements is subject to a motion to strike. We will not reverse a trial court's ruling on a motion to strike absent an abuse of discretion. *Hickory Grove Investors Ltd. v. Jackson*, 180 Ohio App.3d 60, 2008-

14

Ohio-6428, 904 N.E.2d 546, ¶15; *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340, 798 N.E.2d 1141, ¶17.

{¶44} The Siegels claim that Craddieth and Fernanders were expert witnesses. In their affidavits these women testified to the issue of "good faith." Under Evid.R. 702, a witness is qualified to testify as an expert if: "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;" and "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information." In making this determination, a trial court focuses on whether the witness' opinion is based on scientifically valid principles, and not whether the expert's conclusions may be correct. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 1998-Ohio-178, 687 N.E.2d 735, paragraph one of the syllabus.

{¶45} Craddieth's and Fernanders' affidavits do not meet these requirements. The affidavits do not set forth how the ultimate issue of "good faith" is beyond the knowledge of lay persons, or how expert testimony in this regard would help to dispel a "misconception common among lay persons." Further, the affidavits do not demonstrate that Craddieth or Fernanders had had specialized training based on scientifically valid principles that would qualify them to properly determine whether LifeCenter and Beebe had acted in "good faith" when attempting to acquire Daniel's consent. The only qualifications listed were that these women had been trained by LifeCenter and had worked for LifeCenter. We hold that the trial court's decision to strike these affidavits was not an abuse of discretion. *Blakemore v.*

*Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. The Siegels' fourth assignment of error is overruled.

### VI. Civ. R. 37 Sanctions

{¶46} In their fifth assignment of error, the Siegels assert that the trial court erred when it failed to impose sanctions on LifeCenter's attorney under Civ.R. 37. The Siegels specifically contend (1) that counsel's unilateral decision to take a break during Beebe's deposition "when plaintiffs were getting extremely important testimony on the key issue," warranted sanctions; and (2) that counsel should have been sanctioned for instructing Beebe not to answer counsel's question concerning what had transpired during the break.

{¶47} Civ.R. 37 sets forth the procedure and grounds for court-ordered sanctions against a party unjustifiably resisting discovery. This rule does not allow for sanctions based on an attorney's unilateral decision to take a break during a deposition. We therefore hold that there was no error in the trial court's refusal to impose sanctions based on this conduct.

{¶48} Where a witness has refused to answer a question posed during a deposition, as in this case, Civ.R. 37(A)(2) allows the opposing party to seek a court order compelling the witness to answer. If there is no compliance, the trial court may then impose sanctions. *Grady v. Kalinsky, D.D.S., Inc.*, 165 Ohio App.3d 306, 2005-Ohio 5550, 846 N.E.2d 537, ¶17; *Sexton v. Sugar Creek Packing Co.* (1973), 38 Ohio App.2d 32, 311 N.E.2d 535. Sanctions are based on the party's failure to follow the court's order. Civ.R. 37(B).

{¶49} Here, the Siegels filed a motion with the trial court entitled "motion to compel discovery and for sanctions." But the motion requested sanctions, only. And

16

the trial court never issued an order directing Beebe to answer counsel's question concerning what had transpired during the break. Since the Siegels failed to follow proper Civ.R. 37 procedure, they had no grounds to request sanctions.

{¶50} Accordingly, the Siegels' fifth assignment of error is overruled.

### VII. Motions to Amend

{¶51} In the Siegels' seventh assignment of error, they argue that the trial erred when it granted the Eye Bank's motion to amend its answer under Civ.R. 15(A). Civ.R. 15(A) provides that a party may amend its pleading by leave of court and that such leave "shall be freely granted when justice so requires." We review the trial court's decision for an abuse of discretion. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co.* (1991), 60 Ohio St.3d 120, 121-122, 573 N.E.2d 622.

{¶52} Here, the Eye Bank moved the trial court to allow it to amend its answer so that it could assert that it had acted in "good faith." The Eye Bank filed its motion only a few months after filing its first answer. And the motion was made at the beginning of the discovery process, before any of the parties had taken depositions. Under these circumstances, we hold that the trial court did not abuse its discretion in granting the Eye Bank's motion to amend. See *Blakemore*, supra. This assignment of error is overruled.

{¶53} In their eighth assignment of error, the Siegels claim that the trial court should have granted their Civ.R. 15(B) motion to amend the pleadings to conform to the evidence. But Civ.R. 15(B) does not apply in this case. It is applicable only in cases that have gone to trial, not those determined on summary judgment. Civ.R. 15(B); see, also, *Suriano v. NAACP,* 7th Dist. No. 05 JE 30, 2006-Ohio-6131.

We therefore hold that the trial court did not abuse its discretion in overruling this motion. See *Blakemore*, supra. The Siegels' eighth assignment of error is overruled.

## VIII. Conclusion

{¶54} In sum, we reverse the trial court's entry of summary judgment on the Siegels' state-law claims against LifeCenter and Beebe. The trial court's judgment is affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

SUNDERMANN, P.J., and CUNNINGHAM, J., concur.

Please Note:

The court has recorded its own entry on the date of the release of this decision.