[Cite as *Beattie v. McCoy*, 2018-Ohio-2535.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DOLLY BEATTIE, | : | APPEAL NOS. C-170197 |
| | | C-170211 |
| Plaintiff-Appellant/Cross-Apellee, | : | TRIAL NO. A-1604245 |
| vs. | : | |
| | | *O P I N I O N.* |
| TERRANCE MCCOY, | : | |
| and | : | |
| STATE FARM FIRE & CASUALTY COMPANY, | : | |
| | : | |
| Defendants, | : | |
| and | : | |
| OHA INSURANCE SOLUTIONS, INC., | : | |
| | : | |
| Defendant-Appellee/ Cross-Appellant. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed from are: Affirmed in C-170197; Reversed in C-170211

Date of Judgment Entry on Appeal: June 29, 2018

*Bingham Greenebaum Doll LLP, Alex Rodger* and *Daniel J. Donnellon,* for Plaintiff-Appellant/Cross-Appellee,

*Roetzel & Andress, LPA, Laura M. Faust, Chad M. Sizemore* and *Tyler M. Jolley*, for Defendant-Appellee/Cross-Appellant.

**CUNNINGHAM, Judge.**

{¶1}    In these consolidated appeals, the parties contest whether defendant-appellee and cross-appellant OHA Insurance Solutions, Inc., ("OHAIS") must provide indemnification under a professional-liability insurance policy it issued to defendant Terrance McCoy, a former medical doctor, for harm that he caused to his patient, plaintiff-appellant and cross-appellee Dolly Beattie, during McCoy and Beattie's tumultuous one-year sexual relationship.

{¶2}    In the appeal numbered C-170197, Beattie challenges the trial court's entry resolving the parties' cross-motions for summary judgment in favor of OHAIS on her claim that under the terms of its professional-liability policy OHAIS had a duty to indemnify because McCoy had harmed Beattie "while performing [a] professional service."  And in the appeal numbered C-170211, OHAIS has brought a cross-appeal challenging the trial court's denial of its motion to strike the affidavit of Beattie's expert witness.

{¶3}    Because the trial court erred in denying OHAIS's motion to strike the challenged affidavit, we reverse its judgment in OHAIS's cross-appeal.  Because we find no error in the trial court's entry granting summary judgment for OHAIS on the insurance-coverage issue, we affirm the trial court's judgment challenged in Beattie's appeal.

### SEXUAL CONDUCT BY McCOY

{¶4}    McCoy is a self-described "sex addict" who nonetheless practiced internal medicine from 1993 until October 2012.  In 2003, the State Medical Board of Ohio suspended McCoy's license for six month because he had had an affair with a patient.

2

{¶5}   McCoy had been Beattie's internist since 1996.  He treated her for a variety of medical ailments.  In October 2010, she informed McCoy that she was suffering from depression and asked him for help.  McCoy referred Beattie to Dr. Janet Stedman, a clinical therapist, for treatment of depression and anxiety. Beattie's first appointment with Dr. Stedman was on October 21, 2010.

{¶6}   On September 8, 2011, Beattie visited McCoy complaining of pain in her hands, and body aches and swelling.  McCoy examined Beattie's back and shoulders.  Beattie claims that McCoy then began to rub her shoulders and placed his hands on her breasts, rubbed his groin against her, and exposed himself.  Beattie did not stop McCoy's advances and the two kissed.

{¶7}   After this encounter the two began a tumultuous sexual relationship. Though both were married, they met for sex weekly.  McCoy visited Beattie's house when her husband was out of town.  Beattie rented motel rooms to have sex with McCoy.  They had sex in McCoy's office after hours and on weekends.  They exchanged lewd messages, photographs, and video files.

{¶8}   During the year-long affair, Beattie and McCoy often fought.  Beattie threatened to report McCoy's behavior to the state medical board and to McCoy's wife.  But she continued her illicit relationship with him.  McCoy stated that he had begun the affair to satisfy his sexual addiction, but remained in the affair because he feared being discovered.

{¶9}   Eventually Beattie filed a complaint with the state medical board.  But McCoy convinced her to withdraw her charges.  The state medical board continued its own independent investigation, and McCoy was forced to surrender his medical license in 2012 with no opportunity for reinstatement.  Beattie ultimately informed McCoy's wife and his employer about their affair.

### THE DISPUTE OVER INSURANCE COVERAGE

{¶10} During the time of the affair, OHAIS had issued to its insured, McCoy, a "Professional Liability Insurance Policy for Healthcare Professionals." The policy provided, in pertinent part, that:

> We will pay claims which the insured becomes legally obligated
>
> to pay because of professional services provided or which should have
>
> been provided. We will pay only if:
>
> The claim involves an allegation of injury * * * because of
>
> professional services provided or which should have been provided or
>
> that result from an incident which causes bodily injury * * *.

{¶11} The policy defined "professional services" as "medical, surgical, dental, imaging, mental or other health care professional service or treatments * * *; [and the] provision of drugs, health care supplies or appliances."

{¶12} Beattie commenced this action in 2016, alleging, inter alia, that McCoy's sexual behavior constituted medical malpractice which had caused her great harm. In the eighth count of her complaint, Beattie also sought a declaration that under the terms of its professional-liability policy OHAIS had a duty to indemnify McCoy because he had damaged Beattie "while performing [a] professional service." OHAIS answered the complaint, and raised its counterclaim against Beattie seeking a declaration that it was not obligated to indemnify McCoy against the claims asserted by Beattie. McCoy requested that OHAIS defend and indemnify him. OHAIS defended McCoy under a strict reservation of rights, but declined any duty to indemnify him.

{¶13} During discovery, Beattie identified Stuart Bassman, Ed.D., a clinical psychologist, as her expert witness. Before Dr. Bassman's deposition, he produced

reports in which he opined that Beattie had sustained aggravation of her post-traumatic stress disorder ("PTSD"), because of the affair with McCoy. Beattie already suffered from PTSD and other issues, including depression and anxiety, because of prior sexual violence inflicted on her in her youth. In Dr. Bassman's opinion, McCoy should have known that Beattie was vulnerable because of her history, and with that knowledge, he exploited and "revictimized" Beattie by having a sexual relationship with her.

{¶14} Based upon the opinions offered in Dr. Bassman's deposition testimony and the report made an exhibit to his testimony, OHAIS moved for summary judgment on its insurance-coverage counterclaim. Beattie also filed a summary-judgment motion on her insurance-coverage claim and opposed OHAIS's motion. Attached to Beattie's motion was an affidavit from Dr. Bassman in which he extensively discussed "transference phenomenon" and his opinion that McCoy failed to manage Beattie's transference properly.

{¶15} OHAIS moved to strike Dr. Bassman's affidavit claiming that the affidavit contained opinions that had not been previously disclosed and were inadmissible under Civ.R. 56 and Evid.R. 702 and 705. The trial court held a lengthy hearing on the matter, and on April 10, 2017, denied the motion. The trial court also journalized an entry granting OHAIS's motion for summary judgment on its insurance-coverage counterclaim, and denying Beattie's summary-judgment motion on her declaratory-judgment claim.

{¶16} In mid-April, the trial court ruled in favor of Beattie on her medical malpractice claims against McCoy and entered judgment in Beattie's favor in the amount of $867,500.

{¶17}  Beattie and OHAIS filed timely notices of appeal or cross-appeal from those entries.  In the appeal numbered C-170197, Beattie challenges the trial court's entry of summary judgment in favor of OHAIS on insurance coverage.  And in the appeal numbered C-170211, OHAIS has brought a cross-appeal challenging the denial of its motion to strike Dr. Bassman's affidavit.

### OHAIS's CROSS-APPEAL CHALLENGING DR. BASSMAN'S AFFIDAVIT

{¶18}  Because Civ.R. 56(C) sets forth an exclusive list of evidentiary materials that a trial court may consider when ruling upon a summary-judgment motion, and because Civ.R. 56(E) confines a court to consider only evidence that would be admissible at trial, we first resolve OHAIS's cross-appeal challenging the admission of Dr. Bassman's affidavit under Civ.R. 56.  In the sole assignment of error, in its cross-appeal numbered C-170211, OHAIS argues that the trial court erred when it denied its motion to strike Dr. Bassman's affidavit attached to and offered in support of Beattie's motion for summary judgment on her insurance-coverage claim against OHAIS.[1]

{¶19}  OHAIS argues that Dr. Bassman identified in his affidavit, for the first time, that Beattie exhibited "transference phenomenon" to support Beattie's contention, in her motion, that McCoy had failed to recognize her positive transference and thus had failed to provide a professional service for that mental condition that included refraining from sex.  These failures, Dr. Bassman stated, caused Beattie serious harm and any physician would have taken steps to avoid that harm.  OHAIS contends that since Dr. Bassman was not qualified to render these

---

[1] While OHAIS also claimed to appeal from the trial court's entry denying its motion to compel discovery, OHAIS has not argued that matter in its appellate brief.  Matters not argued and supported by legal authority and citation to the record are abandoned.  *See* App.R. 12(A)(1)(b) and 16(A).

6

opinions and that he had not demonstrated the reliability of transference phenomenon as applied here, the trial court should have granted its motion to strike the affidavit. We agree.

{¶20} Dr. Bassman was deposed extensively in February and early March 2107. His deposition testimony was memorialized in over 250 pages of transcript. A nine-page written report of Dr. Bassman's evaluation of Beattie was attached as an exhibit to his deposition testimony. In his deposition and report, Dr. Bassman did not mention transference phenomenon. Rather he concluded that Beattie suffered from post-traumatic stress disorder. And he opined that Beattie may have engaged in a sexual relationship with McCoy, against her better interests, because of "revictimization." Dr. Bassman related that revicitimization "refers to the fact that * * * women who were physically or sexually abused as children are more likely to be abused as adults."

{¶21} Five days after the completion of Dr. Bassman's deposition, Beattie moved for summary judgment on her declaratory-judgment claim, and opposed OHAIS's summary-judgment motion, in part, on the basis of the expert opinions contained in Dr. Bassman's attached affidavit.

{¶22} In the affidavit, Dr. Bassman maintained that Beattie exhibited transference phenomenon: when a patient unconsciously projects on an authority figure, like a treating psychologist in a psychotherapeutic relationship, feelings and behaviors associated with significant persons in the patient's life. While OHAIS's own corporate representative had answered a number of questions regarding the transference phenomenon in her deposition conducted the day before Dr. Bassman's second and final deposition, Dr. Bassman had not referred to transference in his deposition or his report.

{¶23} In his affidavit, Dr. Bassman noted that Beattie had reported that she had suffered extensive early-life traumas and parental abuse. Dr. Bassman found that Beattie adored McCoy as a devoted and compassionate authority figure who would not exploit her. Thus Beattie "submitted to the authority of her trusted physician," and entered in to a sexual relationship with McCoy as a result of the transference phenomenon.

{¶24} Dr. Bassman further opined that "physicians should know about transference as part of their education and training." Finally, Dr. Bassman concluded "it appears that" McCoy, as her treating physician, should have been aware of Beattie's "predisposition toward positive transference" and his failure to refrain from sexual contact with Beattie and his failure to help her recognize the transference phenomenon caused Beattie serious harm, and any physician would have taken steps to avoid that harm.

{¶25} Under Civ.R. 56(E), an affidavit must be made on personal knowledge and must "set forth such facts as would be admissible in evidence." Further, the affidavit must "show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Thus the party offering a witness as an expert has the burden of establishing that the witness is qualified to competently give such testimony. *See Tully v. Mahoning Exp. Co.*, 161 Ohio St. 457, 119 N.E.2d 831 (1954), paragraph two of the syllabus; *see also Wright v. Hamilton*, 141 Ohio App.3d 296, 750 N.E.2d 1190 (12th Dist.2001). Here, Dr. Bassman's affidavit containing expert opinion must meet the rules governing the admissibility of those opinions contained in Evid.R. 702, 703, and 705. *See Douglass v. Salem Community Hosp.*, 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, ¶ 21 (7th Dist.); *see also Smith v. Cincinnati Gas & Elec. Co.*, 75 Ohio App.3d 567, 600 N.E.2d 325 (1st Dist.1991). An

expert's affidavit that does not meet these requirements is subject to a motion to strike. *See Siegel v. LifeCenter Organ Donor Network*, 2011-Ohio-6031, 969 N.E.2d 1271, ¶ 43 (1st Dist.); *see also Wesley v. Walraven*, 4th Dist. Washington No. 12CA18, 2013-Ohio-473, ¶ 21-24. We review a trial court's ruling on a motion to strike for an abuse of discretion. *See Siegel* at ¶ 43.

{¶26} In order to comply with Civ.R. 56(E) and Evid.R. 702 and 705, an expert affidavit must set forth the expert's credentials and the facts supporting the expert's opinion which would be admissible into evidence. *See Douglass* at ¶ 21. An expert's affidavit may not set forth conclusory statements without sufficient supporting facts. *See id.* at ¶ 28; *see also Smith*, 75 Ohio App.3d at 570, 600 N.E.2d 325.

{¶27} Under Evid.R. 702, a witness is qualified to testify as an expert if:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; [and]

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

{¶28} And Evid.R. 705 requires an expert to disclose the facts or data underlying his opinion.

{¶29} Here, Dr. Bassman's affidavit does not meet these requirements. First, Dr. Bassman has not established that his opinion was based on "reliable scientific, technical, or other specialized information." *See* Evid.R. 702(C). Dr. Bassman did

9

not cite to any medical or psychological authority demonstrating that transference phenomenon exists as Dr. Bassman described it in paragraph three of the affidavit, or that Beattie's submission to McCoy was to a reasonable degree of psychological certainty a result of McCoy's "mismanagement" of the transference phenomenon. Dr. Bassman did not identify the basis, either in his training or his experience, for his opinion regarding the reliability of transference phenomenon. Dr. Bassman did not relate his familiarity with transference phenomenon and its reliability in his deposition or the attached report.

{¶30} Next, Evid.R. 702(B) requires an expert to testify within the area of his or her expertise. *See Metro. Life Ins. Co. v. Tomchik*, 134 Ohio App.3d 765, 777, 732 N.E.2d 430 (7th Dist.1999). Here, Dr. Bassman offered an opinion that a physician, like McCoy, specializing in internal medicine should have recognized Beattie's positive transference.

{¶31} We note that although Dr. Bassman declared that his curriculum vitae was attached to the affidavit, it was not. Generally a court may strike affidavit paragraphs that refer to a document which was not properly attached. *See Douglass*, 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, at ¶ 22. But Dr. Bassman's curriculum vitae was made an exhibit to his deposition testimony. That document provides that Bassman has a doctorate in Counselor Education, and that he is an experienced, licensed psychologist with a specialty in sexual-related psychological treatment. But the affidavit fails to disclose any specialized knowledge, skill, training, or treating experience regarding transference phenomenon or patients that suffer from it.

{¶32} Most importantly, neither his affidavit nor his curriculum vitae disclose whether Dr. Bassman had any experience with regard to what training

10

physicians receive in the diagnosis and treatment of psychological conditions in general, or specifically of transference phenomenon. Thus, Dr. Bassman was not qualified to opine, as he did in paragraph four of the affidavit, that "[p]hysicians should know about transference as part of their training and education." *See Schechter v. Ohio State Med. Bd.*, 10th Dist. Franklin No. 04AP-1115, 2005-Ohio-4062 (affirming the permanent revocation of a psychiatrist's license to practice medicine and noting expert testimony declaring that it can be very difficult to deal appropriately with eroticized transference, and that most psychiatrists never experience eroticized transference in the course of their practice).

{¶33} The impact of Dr. Bassman's lack of demonstrated expertise regarding a physician's understanding of transference phenomenon is compounded by the limited information upon which he actually relied in reaching his opinions. While Dr. Bassman acknowledged that "the available information that I have is based upon [Beattie's] self report," he nonetheless concluded that "*it appears* that as her 'treating physician' [McCoy] was well aware of the patient's vulnerable emotional state * * *." (Emphasis added.) Yet Dr. Bassman admitted in the affidavit that he had not "evaluated" McCoy. Nowhere in his affidavit does Dr. Bassman affirmatively disclose the facts he relied upon in concluding that McCoy was "well aware" of Beattie's condition as required by Evid.R. 705. *See Smith*, 75 Ohio App.3d at 570, 600 N.E.2d 325. Similarly, in paragraph six of the affidavit, Dr. Bassman concluded that "based upon the available information that I have, Dolly Beattie approached Dr. McCoy with a positive transference." Yet he did not disclose what that available information was as required by Evid.R. 705.

{¶34} Applying the requirements of Civ.R. 56(E) and Evid.R. 702 and 705 to Dr. Bassman's affidavit, we find the opinions contained in the affidavit were

11

inadmissible. Dr. Bassman's affidavit failed to establish that transference phenomenon was scientifically or psychologically reliable, or that he was qualified to render an opinion on whether McCoy should have recognized Beattie's transference and thus failed to provide a professional service that a competent physician should have provided. Thus we hold that the denial of the motion was an abuse of discretion. *See AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶35} OHAIS's assignment of error is sustained.

### *BEATTIE'S APPEAL CHALLENGING THE DENIAL OF INSURANCE COVERAGE*

{¶36} In her single assignment of error, in the appeal numbered C-170197, Beattie argues that the trial court erred in granting summary judgment in favor of OHAIS on its counterclaim seeking a declaration that it has no obligation to indemnify McCoy under the professional-liability insurance policy against claims raised by Beattie, and in denying Beattie's own summary-judgment motion on insurance coverage.

{¶37} The gravamen of Beattie's argument is that failing to refrain from sex or failing to rebuke Beattie's sexual advances was a part of the professional services that McCoy should have rendered. Thus under the policy's terms, OHAIS was required to indemnify McCoy for his failure to provide those professional services.

{¶38} A court is not precluded from granting summary judgment merely because of the complexity or the volume of the factual record. *See Gross v. Western-Southern Life Ins. Co.*, 85 Ohio App.3d 662, 666-667, 621 N.E.2d 412 (1st Dist.1993); *see also Southside River-Rail Terminal v. Crum & Forster Underwriters of Ohio*,

157 Ohio App.3d 325, 2004-Ohio-2723, 811 N.E.2d 150, ¶ 8 (1st Dist.). That is particularly so where, as here, the parties have each moved for summary judgment.

{¶39} We have in the past questioned the wisdom of resolving matters seeking declaratory judgment by summary judgment. *E.g., Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emps., AFL–CIO*, 93 Ohio App.3d 162, 164, 638 N.E.2d 94 (1st Dist.1994). Nonetheless, the parties' election to address the issues by cross-motions for summary judgment demonstrates that both sides believed that there was no genuine issue of material fact in dispute and that the court was free to render a decision on insurance coverage as a matter of law. *See Costanzo v. Nationwide Mut. Ins. Co.,* 161 Ohio App.3d 759, 2005-Ohio-3170, 832 N.E.2d 71, ¶ 10 (1st Dist.); *see also State ex rel. Scripps Media v. Hunter*, 1st Dist. Hamilton No. C-130241, 2013-Ohio-5895, ¶ 31.

{¶40} A motion for summary judgment shall be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion and that conclusion is adverse to the party opposing the motion. *See* Civ.R. 56(C); *see also Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

{¶41} The interpretation of clear, unambiguous contract terms is a question of law particularly appropriate for resolution by summary judgment. *See Costanzo* at ¶ 19. These issues raise only questions of law that we review de novo. *See State Farm Fire & Cas. Co. v. Condon*, 163 Ohio App.3d 584, 2005-Ohio-5208, 839

13

N.E.2d 464, ¶ 18 (1st Dist.); *see also Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶42} When determining coverage, a court examines "the insurance contract as a whole and presume[s] that the intent of the parties is reflected in the language used in the policy." *Safeco Ins. Co. v. Fed. Ins. Co.*, 1st Dist. Hamilton No. C-070074, 2007-Ohio-7068, ¶ 26, citing *Westfield v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. When the intent of the parties is evident from the clear and unambiguous language of the policy, a court must enforce the contract as written. *See Southside River-Rail Terminal*, 157 Ohio App.3d 325, 2004-Ohio-2723, 811 N.E.2d 150, at ¶ 11.

{¶43} The resolution of this matter does not rest on a determination of whether McCoy's abhorrent conduct violated the ethical norms of the medical profession or breached a physician's standard of care due to his patient. Sexual conduct with a patient may be a grave breach of both of those obligations. *See, e.g., Bunce v. Parkside Lodge of Columbus*, 73 Ohio App.3d 253, 254, 596 N.E.2d 1106 (10th Dist.1991). Here, the sole issue for our resolution is whether under the terms of OHAIS's professional-liability insurance policy, McCoy's conduct in failing to refrain from sex or failing to rebuke Beattie's sexual advances was a part of the professional services that McCoy should have rendered.

{¶44} Under the natural and commonly accepted meaning of the policy terms, a physician, like McCoy, does not provide a "professional service" by engaging in sexual conduct with a patient. Sexual conduct is not specifically identified as a professional service in the policy. It is so dissimilar from the professional services enumerated in the policy, that no construction of the policy language would support coverage for sexual conduct as a "professional service." McCoy stated that he did not

have sex with Beattie to treat any medical or mental condition, rather he did so because of his own personal sex addiction.

{¶45} But the express policy language also provides coverage when an "insured becomes legally obligated to pay because of professional services * * * which should have been provided." Beattie maintains that refraining from sexual conduct with Beattie or rebuking her sexual advances was a part of the professional services that McCoy should have rendered. Beattie offered Dr. Bassman's transference opinion to establish that McCoy, as a treating physician, was required as part of his professional services to avoid sexual misconduct with a patient exhibiting positive transference.

{¶46} Even without resort to Dr. Bassman's inadmissible opinion, Beattie maintains, as she did at oral argument, that any physician, aware of his patient's transference or not, who fails to refrain from sex or fails to rebuke the sexual advances of a patient that he is treating for a mental condition has failed to provide a professional service that he should have rendered.

{¶47} In support of this argument, Beattie urges us to adopt the reasoning of *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698, 701-702 (Minn.1990), a transference case, in which the Minnesota Supreme Court held that sexual misconduct that is inextricably related to a therapeutic relationship between a psychologist and his patient, being treated for marital problems and childhood sexual abuse, could fall within the coverage of a therapist's professional-liability insurance policy. The sexual conduct in *Love*, while "aberrant and unacceptable," was "so related to the treatment contemplated" that it came within the scope of the insurance coverage for professional services provided or withheld.

15

{¶48} We note that no Ohio court has adopted the rationale of *Love*. And we need not do so today. Even under *Love*, Beattie cannot demonstrate as a matter of law that McCoy's sexual conduct was inextricably related to the professional services that he provided or withheld. Unlike the licensed therapist in *Love*, or the psychiatrist in *Schechter v. Ohio State Med. Bd.*, 10th Dist. Franklin No. 04AP-1115, 2005-Ohio-4062, the psychiatric social worker in *Chaney v. Dept. of Mental Health*, 12th Dist. Clermont No. CA83-08-072, 1984 WL 4364, *2 (Mar. 29, 1984), or the alcoholism-and-drug-abuse counselor in *Perkins v. Schneider*, 128 Ohio App.3d 121, 122, 713 N.E.2d 1132 (9th Dist.1998), McCoy's therapeutic relationship with Beattie was a limited one.

{¶49} Since 1996, McCoy had been treating Beattie for a variety of minor medical ailments. When, in October 2010, Beattie informed McCoy that her depression was worsening and asked him for help, McCoy did not enter into an involved "therapeutic alliance" with her. Rather he referred Beattie to Dr. Janet Stedman, a clinical therapist, for treatment of depression and anxiety. Her first appointment with Dr. Stedman was on October 21, 2010, almost exactly one year before McCoy's sexual conduct began. While McCoy continued to prescribe medicine for these conditions, there is nothing in the record to indicate that McCoy engaged in the type of intimate psychological therapy contemplated in *Love* or in the Ohio cases cited above. McCoy's deposition testimony revealed that he was not aware of traumas in Beattie's childhood or young adult life. And Beattie, rather than being in thrall "to the authority of her trusted physician," threatened throughout the turbulent affair to report McCoy to the state medical board and to reveal their sexual relationship to his wife, and ultimately did so. Thus McCoy's sexual conduct was not inextricably related to the medical or mental professional treatment that Beattie

16

received. Beattie has not established that McCoy's sexual conduct was a consequence of his treatment of her depression and anxiety, and thus his failure to avoid that conduct was a professional service which he should have provided.

{¶50} Since OHAIS was entitled to judgment as a matter of law on its claim that it was not obligated to indemnify Beattie for McCoy's failure to provide a professional service, the trial court did not err in granting summary judgment against Beattie. Beattie's assignment of error is overruled.

### *CONCLUSION*

{¶51} Because the trial court erred in denying OHAIS's motion to strike Dr. Bassman's affidavit, we reverse its judgment on that motion challenged in OHAIS's cross-appeal numbered C-170211. In light of our resolution of that matter, and having conducted a de novo review of the evidentiary materials properly before the court, we find no error in the trial court's entry granting summary judgment for OHAIS on its insurance-coverage counterclaim. Thus we affirm the judgment in Beattie's appeal numbered C-170197.

Judgment accordingly.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.