[Cite as *Buroker v. Pratt Industries, Inc.*, 2020-Ohio-2845.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| William K. Buroker, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-383 |
| v. | : | (C.P.C. No. 18CV-4383) |
| Pratt Industries, Inc., et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on May 7, 2020

**On brief:** *Robert W. Kerpsack Co., LPA,* and *Robert W. Kerpsack,* for appellant. **Argued:** *Robert W. Kerpsack.*

**On brief:** *Plunkett Cooney, P.C., Christina L. Corl* and *Daniel J. Hurley,* for appellees Pratt (Corrugated Logistics), LLC, and Pratt (Jett Corr), Inc. **Argued:** *Daniel J. Hurley.*

**On brief:** *Hannah, Campbell & Powell, LLP, Kenneth A. Calderone,* and *R. Brian Borla,* for appellees Turmoil Trucking LLC, and Dwayne A. Snyder. **Argued:** *R. Brian Borla.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, William K. Buroker, appeals from a judgment of the Franklin County Court of Common Pleas entered on June 14, 2019, in favor of defendants-appellees, Pratt Corrugated Logistics, LLC ("Pratt (Corrugated Logistics)"), Pratt Jett Corr, Inc. ("Pratt (Jett Corr)"), Turmoil Trucking, LLC ("Turmoil"), and Dwayne A. Snyder ("Snyder") (hereafter referred to collectively as "appellees"). In its decision, the trial court granted appellees' motions to strike affidavits submitted on behalf of Buroker and granted appellees' motions for summary judgment on Buroker's claims against them. For the reasons that follow, we reverse and remand this matter for trial.

## I.  FACTS AND PROCEDURAL BACKGROUND

### A.  Overview

{¶ 2}    This matter arises from a one-vehicle accident of a tractor-trailer commercial vehicle that occurred on May 26, 2016 on State Route 83 in Chatham Township, Medina County, Ohio.  Buroker was the owner, operator, and sole occupant of the semi-truck that was pulling the trailer when it went off State Route 83 into a ditch, which resulted in the semi-truck and the trailer being turned over.  Buroker had picked up the pre-loaded trailer at Pratt Industries, Inc.'s ("Pratt Industries")[1] facility in Springfield, Ohio and was in route to a delivery location in Avon, Ohio when the accident occurred, approximately two and one-half hours after he had left Pratt's Springfield facility.  At the time of the accident, Buroker had a commercial driver's license ("CDL") and was a self-employed truck driver under the name Buroker Trucking.  He was not working pursuant to any lease agreement.

{¶ 3}    Buroker filed the underlying negligence action against multiple parties on May 23, 2018, seeking compensatory damages for personal injuries and property losses incurred in the accident.  Buroker's theory of liability is that an employee at Pratt Industries' Springfield facility had failed to lock the pins in the rear tandem axle of the trailer before he hooked up to the trailer and that it was this failure that caused the accident.

### B.  Facts

{¶ 4}    Pratt Industries is the parent company of Pratt (Corrugated Logistics).  Pratt (Jett Corr) owns and operates a box plant under the Pratt Industries name in Springfield, Ohio. Pratt (Jett Corr) contracts with Pratt (Corrugated Logistics) to haul its corrugated boxes to Pratt (Jett Corr)'s customers.   Pratt (Corrugated Logistics) sometimes subcontracts hauling jobs to Turmoil, which is owned by Snyder.

{¶ 5}    In the underlying matter, Turmoil was scheduled to haul 15 trailers pre-loaded with corrugated boxes from Pratt Industries in Springfield, Ohio, to a company in Avon, Ohio, on May 26, 2016.  Because Turmoil did not have enough semi-trucks available to do the hauling for Pratt (Jett Corr), Snyder contacted Buroker and offered him the job of picking up one of the pre-loaded trailers and delivering the load to the company in Avon.  Snyder told Buroker he would be paid in full, with Turmoil and Snyder not receiving money for hauling that trailer.

---

[1] Buroker substituted appellee Pratt (Jett Corr) for Pratt Industries, Inc. as a party-defendant.

{¶ 6}    On the date of the accident, Buroker drove his semi-truck to Pratt Industries in Springfield where he met Snyder and received the bill of lading for the shipment he would be hauling.  Buroker testified at his deposition that he backed his semi-truck "up to the [pre-loaded trailer], hooked up to it.  Walked around, made sure the lights worked, kicked the tires and we left."  (Buroker Dep. at 44.)  He testified that he never opened the trailer door and looked inside because the trailer was sealed. Buroker further testified that, after performing those tasks, he did not check the brakes or lift the hood.  He testified that he observed the locking handle on the axle pins before leaving the Pratt (Jett Corr) facility, but he did not note whether the axle pin was in the up and locked position.

{¶ 7}    Buroker further testified at his deposition that he followed Snyder, who was also driving a tractor trailer from the Pratt (Jett Corr) facility to the Columbus area, where they became separated, with one of them driving north on Interstate 71, while the other taking the west outerbelt, Interstate 270 north, to Interstate 71 north of Columbus.  When Buroker was on Interstate 71 north of Columbus, Snyder was nowhere in sight.  When Buroker exited Interstate 71 at State Route 83, he still had no sight of Snyder.

{¶ 8}    Approximately two and one-half hours after Buroker left Pratt Industries, after traveling roughly 150 miles, the trailer went off the road into a ditch on State Route 83, at which point Buroker "laid the truck over" rather than cross the centerline of State Route 83 into southbound traffic.  (Buroker Dep. at 57.)  Buroker stated that "[t]he trailer steered itself into the ditch," and that "[i]t felt like it had to be a steering axle. All of a sudden, my * * * trailer just starts going into the ditch and there wasn't no pulling out. I tried." *Id.* at 58.  Buroker testified that he had not noticed any swaying of the trailer before that.  He reiterated, "[i]t acted like it had a steering axle on the back. When it went off, it went off. By the time I--when I looked in my rearview mirror, I didn't see nothing but trailer. It was that fast." *Id.* at 59-60.  Buroker believed the trailer behaved that way because "[t]he trailer tandems weren't pinned. So that allows them things to move and it becomes like a steering axle." *Id.* at 60.  Buroker testified further:

> When I observed the trailer tandems, they were upside down on the road, okay. When I observed the rails that they slide on * * * [t]hey were intact. They weren't bent. They weren't nothing. So there was nothing holding that set of trailer tandems underneath that trailer other than the DOT bumper on the back.

> So in other words, when it hit the culvert, it knocked them completely out of there. Now if they would have been pinned, that couldn't have happened.

*Id.* at 113-14. Buroker stated he did not know who unlocked the pins but believes it was whoever was "jockeying" the trailers at Pratt Industries' Springfield facility. *Id.* at 118.

{¶ 9} On May 23, 2018, Buroker filed the underlying action against multiple defendants,[2] including Pratt Industries and its subsidiaries, Turmoil and Snyder, asserting that the defendants' negligence in maintaining, equipping, and/or loading the trailer,[3] proximately caused the accident. Buroker further alleges that, as a direct and proximate result of the defendants' negligence, he incurred numerous injuries, including permanent physical injuries, pain, suffering, emotional distress, loss of property, and permanent impairment to his earning capacity. He sought judgment against the defendants, jointly and severally, in amounts exceeding $25,000 on each of his claims, interests, the costs of the underlying action, and any other relief the trial court deemed appropriate. Buroker subsequently substituted Pratt (Jett Corr) for Pratt Industries, the parent company.

{¶ 10} Buroker's deposition was taken on December 19, 2018. Buroker, on advice of his counsel, waived his right to review the deposition transcript. The deposition of Roy Kuhn, an employee of Pratt Industries, was taken on February 13, 2019. The transcripts of those depositions were filed in the underlying matter.

{¶ 11} On February 27, 2019, Snyder and Turmoil jointly filed a motion for summary judgment to extinguish without a trial Buroker's claims against them, asserting three defenses. First, they argued they were not liable under Buroker's theory that the accident was the result of a Pratt Industries' Springfield facility yard jockey's failure to lock the pins in the rear tandem axle of the trailer he was pulling because, at the time of the

---

[2] Buroker voluntarily dismissed all defendants in the underlying matter except for appellees Pratt (Jett Corr), Pratt (Corrugated Logistics), Turmoil , and Snyder.

[3] Buroker alleges in paragraph five of the complaint that numerous defendants "negligently loaded, secured, maintained, monitored, repaired, replaced, managed, designed, fabricated, manufactured, completed, kept, tested, possessed, controlled, sold, assembled, worked, developed, delivered, provided, supplied, leased, rented, distributed, prepared, blended, packaged, labeled, and/or other participated in the placing the cargo, semi-trailer, and/or its component parts and accessories furnished to [Buroker] into the stream of commerce so as to proximately cause a semi-tractor occupied by [Buroker] and pulling said cargo and semi-trailer to overturn and crash." (May 23, 2018 Compl. at ¶ 5) Buroker alleges in paragraph eight of the complaint that numerous defendants "negligently failed to prevent, intervene, warn, represent, protect, assist, and/or rescue [Buroker] from foreseeable injuries from the aforementioned cargo loading and trailer defects, which were latent, concealed, unsafe, and could not be discerned by the reasonable and ordinary observation by [Buroker]." *Id.* at ¶ 8.

accident, neither Snyder nor any Turmoil employee had performed any yard jockeying at the Pratt Industries' facility.  They assert, therefore, there is no causal connection between the conduct that allegedly gave rise to Buroker's injury and any conduct on the part of Snyder or Turmoil.

{¶ 12}  Second, Snyder and Turmoil argued they were exempted by R.C. 2307.34(C), stating:

> Furthermore, R.C. 2307.34(C) explicitly provides that "No motor carrier authorized by the public utilities commission to conduct operations in this state shall be liable in civil damages for any death, injury, or loss caused by a motor vehicle not owned by the motor carrier, unless the motor vehicle is being operated in the service of a motor carrier pursuant to a valid lease agreement at the time the injury or damage occurs." At the time of the accident, [Buroker] was operating a truck owned by him, and displaying Buroker Trucking LLC's DOT placard. By the plain language of the statute, [Buroker's] claim fails as a matter of law.

(Feb. 27, 2019 Turmoil's and Snyder's Mot. for Summ. Jgmt. at 1-2.)

{¶ 13}  Third, Snyder and Turmoil argue that, assuming the pins on the rear tandem axle were in the unlocked position when Buroker picked up the trailer, "the hazard was hidden and unknown to [Snyder and Turmoil]. Absent knowledge of the hazardous or dangerous condition, [Snyder and Turmoil] cannot be found liable and [Buroker's] claim fails as a matter of law."  (Turmoil's and Snyder's Mot. for Summ. Jgmt. at 2.)

{¶ 14}  Snyder and Turmoil attached in support of the motion the affidavit of Snyder and the transcripts of Buroker's and Kuhn's depositions.

{¶ 15}  Also on February 27, 2019, Pratt (Jett Corr) and Pratt (Corrugated Logistics) jointly filed a motion for summary judgment for Buroker's claims against them. They attached in support of their motion several exhibits, including (1) the transcript of Buroker's deposition, (2) the affidavit of Brian Perry, the owner of a company that had inspected and/or repaired commercial motor vehicles and equipment leased by Pratt Industries and/or Pratt (Corrugated Logistics),  and (3) the affidavit of Michael D. Dorohoff, P.E., "an expert in accident reconstruction, vehicle dynamics and all facets of reconstructing automobile accidents."  (Ex. E at 2, Dorohoff Aff. attached to Feb. 27, 2019 Pratt (Jett Corr)'s and Pratt (Corrugated Logistics)'s Mot. for Summ. Jgmt.)  Pratt (Jett Corr) and Pratt (Corrugated Logistics) asserted that the evidence showed that the Pratt Industries

defendants annually inspected and maintained the fleet of trailers, including the trailer Buroker was hauling at the time of the accident, in accordance with law.  They also asserted that there was no evidence the cargo in the trailer Buroker was hauling could have shifted in any way that contributed to the accident.  Finally, they argued that the evidence demonstrated the following errors on Buroker's part:

> 1) in violation of 49 CFR § 392.9(a)(1) and (b)(1), never inspected the cargo to ensure it was properly distributed and secured; 2) in violation of 49 CFR § 392.9(b)(2), never inspected the cargo and securing devices after 50 miles of his trip; 3) in violation of 49 CFR § 392.9(b)(3), never re-examined the cargo and its load securement devices after driving 150 miles; 4) in violation of 49 CFR § 391.1,  § 393.207, and § 396.13,  failed to conduct a proper and mandatory pre-trip inspection, and more specifically, failed to even look at the locking pins to the trailer's tandem axles which he claims were not engaged when he started his trip.

(Pratt (Jett Corr)'s and Pratt (Corrugated Logistics)'s Mot. for Summ. Jgmt. at 2-3.)

{¶ 16} On March 13, 2019, Buroker filed a memorandum contra all motions for summary judgment, supported by his own attached affidavit to "supplement[]"  and "clarif[y]" his "cross-examination deposition testimony provided in the present case on December 19, 2018."  (Ex. A at 1, Buroker Aff. attached to Mar. 13, 2019 Buroker's Memo. Contra Mot. for Summ. Jgmt.)  He also attached the affidavit of Henry P. Lipian, "an expert witness on subject matters relating to traffic and commercial truck crash investigation and reconstruction."  (Ex. B at 1-2, Lipian Aff. attached to Mar. 13, 2019 Buroker's Memo. Contra Mot. for Summ. Jgmt.)

{¶ 17} On March 15, 2019, Snyder and Turmoil jointly filed a motion to strike Buroker's affidavit. On March 20, 2019, Pratt (Jett Corr) and Pratt (Corrugated Logistics) jointly filed two motions, one to strike the affidavit of Buroker and the other to strike the affidavit of Lipian.

{¶ 18}  Buroker opposed all motions to strike the affidavits of Lipian and himself.

{¶ 19} On June 14, 2019, the trial court filed a decision and entry that (1) granted appellees' motions to strike Buroker's affidavit, (2) granted Pratt (Jett Corr) and Pratt (Corrugated Logistics) joint motion for summary judgment, (3) granted Snyder and Turmoil's joint motion for summary judgment, and (4) declared moot the motion to strike Lipian's affidavit.

{¶ 20} Buroker timely filed this appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 21} Buroker presents three assignments of error for our review:

[1.] The trial court committed reversible error by granting appellees' motions to strike the affidavit of William K. Buroker.

[2.] The trial court committed reversible error by ordering appellees' motions to strike the affidavit of Henry P. Lipian to be moot.

[3.] The trial court committed reversible error by granting and ordering summary judgment on the issue of liability in favor of appellees Pratt (Corrugated Logistics), LLC, Pratt (Jett Corr), Inc., Turmoil Trucking, LLC, and Dwayne A. Snyder.

## III.   LAW AND DISCUSSION

### A.  Standard of Review of Summary Judgment in General

{¶ 22} The trial court resolved Buroker's claims against appellees by summary judgment after orders were entered governing discovery between the parties.  Our standard of review of the trial court's decision granting summary judgment is de novo.  *Helton v. Scioto Cty. Bd. of ComGeorgia*, 123 Ohio App.3d 158, 162, (4th Dist.1997).  As such, we conduct an independent review of the record, and the appellate court "stands in the shoes of the trial court."  (Citations omitted.) *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (10th Dist.1992.)

{¶ 23} Thus, when reviewing an appeal of an order granting a motion for summary judgment, this Court uses the same standard of review as the trial court.  *Freeman v. Brooks*, 154 Ohio App.3d 371, 2003-Ohio-4814, ¶ 6 (10th Dist.), citing *Maust v. Bank One of Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), *jurisdictional motion overruled*, 66 Ohio St.3d 1488 (1993).  And an appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination.  *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).  In determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence according to the standard set forth in Civ.R. 56, as well as according to applicable case law.  *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992); *Cooper v. Red Roof Inns, Inc.*, 10th Dist. No. 00AP-876 (Mar. 30, 2001).

{¶ 24} Civ.R. 56(C) requires that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶ 25} Civ.R. 56 has been described as a means to facilitate the early assessment of the merits of claims, to foster pre-trial dismissal of meritless claims, and to define and narrow issues for trial. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. No. 102119, 2016-Ohio-1466, ¶ 92. *See also Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 170 (1997) (Cook, J., concurring in part and dissenting in part). As such, summary judgment is a procedural device designed to promote judicial economy and to avoid needless trials.

> "The goal of a motion for summary judgment is to narrow the issues in a case to determine which, if any, should go to trial. ' "The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist." ' *State ex rel. Anderson v. The Village of Obetz*, 10th Dist. No. 06AP-1030, 2008-Ohio-4064, ¶ 64, quoting *Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643, 671 N.E.2d 578 (1996) (citations omitted.)"

*Erickson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-74, 2017-Ohio-1572, ¶ 19, quoting *Thevenin v. White Castle Mgt. Co.*, 10th Dist. No. 15AP-204, 2016-Ohio-1235, ¶ 45 (Brunner, J., concurring). Thus, a party seeking summary judgment on the grounds that a nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and must identify those parts of the record which demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996).

{¶ 26} If the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party does not respond, summary judgment, if otherwise appropriate, shall be entered against the nonmoving party. *Id.* The nonmoving party may not rest on the mere allegations or denials of his or her pleadings but must respond with specific facts showing there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. *See also Erickson* at ¶ 19-20.

{¶ 27} When a court on summary judgment draws inferences from evidence, deeming the evidence to be of such quality that the court can make a factual call, it impermissibly weighs the evidence. *Johnson v. Am. Italian Golf Assn.*, 10th Dist. No. 17AP-128, 2018-Ohio-2100.

## B. First Assignment of Error

{¶ 28} Buroker argues the trial court committed reversible error when it granted appellees' motions to strike his affidavit. We disagree.

{¶ 29} The trial court granted Snyder and Turmoil's motion to strike Buroker's affidavit based on its finding that Buroker's affidavit "contradicts [Buroker's] deposition testimony and is self-serving. There is no explanation for why his testimony had changed." (June 14, 2019 Decision & Entry at 5.) The trial court based its decision on the Supreme Court of Ohio's holding "that a party may not challenge a motion for summary judgment with an affidavit that contradicts his prior deposition testimony. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶¶ 26-27." (Decision & Entry at 5.) The trial court applied the following procedure to determine whether summary judgment should still be granted in the underlying matter:

> If any affidavit appears to be inconsistent with a deposition, the court must look to any explanation for the inconsistency. We do not say that a nonmoving party's affidavit should always prevent summary judgment when it contradicts the affiant's previous deposition testimony. After all, deponents may review their depositions and correct factual error before the depositions are signed.
>
> An affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment.
>
> *Pettiford v. Aggarwal*, 126 Ohio St.3d 413, 2010-Ohio-3237, ¶¶ 25-26, citing *Byrd*.

(Decision & Entry at 5-6.)

{¶ 30} The trial court found that Buroker had waived his right to read and review the transcript of his deposition based on the advice of his counsel: "Mr. Buroker's counsel clearly explained his rights to review the deposition, and he unambiguously waived that right." *Id.* at 6. The trial court proceeded to enumerate examples in which Buroker's

affidavit contradicted his deposition testimony. *Id.* For those reasons, the trial court ordered that Buroker's affidavit be stricken. *Id.*

{¶ 31} Based on our review of the record, we agree with the trial court's assessment of Buroker's affidavit and its decision to strike it. We disagree, however, with the trial court's condemnation of Buroker's affidavit for being "self-serving." All testimony that is offered in judicial proceedings, be it testimonial or documentary, in person or in a fixed format, is self-serving. If evidence did not serve to promote the arguments for which the proponent offers it, then the proponent would not bother to offer it.

{¶ 32} We find the trial court did not err in striking Buroker's affidavit and, accordingly, we overrule his first assignment of error.

### C. Second Assignment of Error

{¶ 33} Buroker argues the trial court committed reversible error when it found moot appellees' motions to strike the affidavit of Buroker's expert witness, Henry P. Lipian. On this assignment of error, we agree with Buroker.

### 1. Standard of review on motion to strike affidavit of an expert

{¶ 34} Civ.R. 56(C) sets forth an exclusive list of evidentiary materials that a trial court may consider when ruling on a summary judgment motion. Civ.R. 56(E) confines a court to consider only evidence that would be admissible at trial. Under Civ.R. 56(E), an affidavit must be made on personal knowledge and must "set forth such facts as would be admissible in evidence." Further, the affidavit must "show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." *Id.* "Thus the party offering a witness as an expert has the burden of establishing that the witness is qualified to competently give such testimony." *Beattie v. McCoy,* 10th Dist. No. C-17019, 2018-Ohio-2535, ¶ 25, citing *Tully v. Mahoning Express Co.*, 161 Ohio St. 457 (1954), paragraph two of the syllabus, and *Wright v. Hamilton*, 141 Ohio App.3d 296 (12th Dist.2001). Here, Lipian's affidavit containing expert opinion must meet the rules governing the admissibility of those opinions contained in Evid.R. 702, 703, and 705. *See Beattie; Douglass v. Salem Community Hosp.*, 153 Ohio App.3d 350, 2003-Ohio-4006, ¶ 21 (7th Dist.); *Smith v. Cincinnati Gas & Elec. Co.*, 75 Ohio App.3d 567 (1st Dist.1991). "An expert's affidavit that does not meet these requirements is subject to a motion to strike." *Beattie* at ¶ 25, citing *Siegel v. LifeCenter Organ Donor Network*, 1st. Dist. No. C-100777, 2011-Ohio-6031, ¶ 43; *Wesley v. Walraven*, 4th Dist. No. 12CA18, 2013-Ohio-473, ¶ 21-

24. "We review a trial court's ruling on a motion to strike for an abuse of discretion." *Beattie* at ¶ 25, citing *Siegel* at ¶ 43.

### 2. Analysis

{¶ 35} The testimony of expert witnesses is governed by Article VII of the Rules of Evidence. "In order to comply with Civ.R. 56(E) and Evid.R. 702 and 705, an expert affidavit must set forth the expert's credentials and the facts supporting the expert's opinion which would be admissible into evidence." *Beattie* at ¶ 26, citing *Douglass* at ¶ 21. "An expert's affidavit may not set forth conclusory statements without supporting facts." *Beattie* at ¶ 26, citing *Douglass* at ¶ 28.

{¶ 36} Evid.R. 702 sets forth the following test for determining whether an expert may be allowed to testify:

> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
>
> (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
>
> (2) The design of the procedure, test, or experiment reliably implements the theory;
>
> (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶ 37} Evid.R. 703 through 705 provide for limitations on an expert's testimony. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Evid.R. 703. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable

solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. "The expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise." Evid.R. 705.

{¶ 38} Evid.R. 702(B) requires an expert to testify within the area of his or her expertise. *See Beattie* at ¶ 30; *see also Metro Life Ins. Co. v. Tomchik*, 134 Ohio App.3d 765, 777 (7th Dist.1999). Here, Lipian establishes in his affidavit that he testifies in Ohio and federal courts as an expert witness on subject matters relating to traffic and commercial truck crash investigation and reconstruction.

{¶ 39} Lipian's affidavit establishes his personal knowledge as to the matters attested to in his affidavit:

> 1. * * * The matters stated herein are true and accurate to the best of my own personal knowledge and belief, and based upon my personal knowledge. I hold the opinions stated herein with reasonable scientific (traffic and commercial truck crash investigation and reconstruction) probability and certainty and base such opinions upon my education, training, and experience, the findings of my personal investigation and reconstruction of the motor vehicle collision at issue on May 26, 2016, my assumption of the information recorded or depicted in Ohio State Highway Patrol Crash Report No. 52-0564-52, authenticated photographs of the crash scene/site, and eyewitness testimony.

(Ex. B, Lipian Aff. at ¶ 1.)

{¶ 40} Concerning Buroker's accident, Lipian testified that, in his investigation and reconstruction of Buroker's accident, he personally inspected the official photographs of the crash scene and the involved vehicles, reviewed witness depositions, affidavits, and exhibits thereto, and conducted certain scientific analysis and calculations, including a personal inspection of the crash scene on March 12, 2019. *Id.* at ¶ 3. He noted that the intact and undamaged condition of the sliding axle rails of the trailer following the accident. *Id.* at ¶ 4. He stated:

> Mr. Buroker claims that after traveling without incident for about two hours, the trailer suddenly "acted like it had a steering axle on the back" because the trailer tandem pins were not engaged. The trailer tandem axle/locking pins/slider rail assembly at issue was reportedly fixed in the same rear-most position for the approximate six (6) years the trailer had been

in service hauling corrugated cardboard prior to the collision at
issue.

*Id.*

{¶ 41} Lipian testified that he had reviewed the affidavit of project engineer Michael D. Dorohoff, P.E., and disagreed with many of Dorohoff's opinions. Lipian addressed the areas of disagreement point by point. For example, Lipian testified that:

5. * * * Contrary to the opinions Mr. Dorohoff expressed in Paragraph No. 9 of his Affidavit, and on the basis set forth in Paragraph No. 1 above, it is my opinion that if the trailer tandem locking pins on the slider rails were not properly engaged, as alleged by [Buroker], then compliance/movement would <u>not</u> necessarily have been evident to [Buroker] during his first turn when he left the Pratt facility. Rather, it is my opinion on the same basis that the trailer tandem axle/locking pin/slider rail assembly was probably corroded and stuck in the same forward-most position from approximately six (6) years of non-use, which would result in no compliance/movement until randomly breaking free from normal over-the-road vibrations and forces, which is what reportedly occurred approximately two (2) hours into Buroker's trip. In particular, after exiting from IR 71 to SR 83 and prior to reaching Lodi, Ohio, there are two separate sets of railroad tracks on SR 83, the most northern of which is very rough with a vertical curve immediately north of the tracks. While driving over the tracks, much more vibration and shock would have been experienced by the tractor trailer than during normal roadway travel.

6. Contrary to the opinions Mr. Dorohoff expressed in Paragraph No. 12 of his Affidavit, and on the basis set forth in Paragraph No. 1 above, it is my opinion that if the trailer locking pins are not engaged, then the trailer axles will <u>not</u> necessarily continue to slide rearward until a substitutive longitudinal force resists the longitudinal movement. Rather, it is my opinion on the same basis that a non-engaged trailer tandem axle/locking pin/slider rail assembly that has become corroded and/or stuck in the same position by six (6) years of non-use will probably remain in the same fixed position until suddenly and without warning breaking free during normal over-the-road operation, or as in this case while crossing over two uneven sets of rail road tracks and while beginning to enter a 45 MPH zone from a 55 MPH zone. Furthermore, after heading north out of Lodi, SR 83 is configured with many horizontal and vertical curves requiring a driver to accelerate, decelerate and turn a vehicle to follow the horizontal curves. The

additional stressors from the topography and geometry of the roadway after having crossed over the uneven rail road tracks were probably additional mechanisms for the mechanical failure.

7. Contrary to the opinions of Mr. Dorohoff expressed in Paragraph No. 12 of his Affidavit, and on the basis set forth in Paragraph No. 1 above, it is my opinion that if, as [Buroker] claims, the tandem axle locking pins were disengaged at the time he left the Pratt facility, he would <u>not</u> necessarily have or should have noticed that immediately. Rather, it is my opinion on the same basis that a reasonable person in the position of [Buroker] would not have noticed the tandem axle locking pins were disengaged at the time Buroker left the Pratt facility because the trailer tandem axle/locking pin/slider rail assembly probably had become corroded and/or stuck in the same forward-most position from six (6) years of reported non-use.

(Emphasis sic.) *Id.* at ¶ 5-7.

{¶ 42} Lipian addressed in his affidavit two other issues with which he disagreed with Dorohoff's opinions, and he set forth his own opinions based on his investigation:

12. It is my opinion on the basis set forth in Paragraph No. 1 above that [Buroker], without fault of his part, was confronted with multiple sudden and unforeseen emergencies over which he had no control, which made it impossible Mr. Buroker's [sic] compliance with safety statutes relating to the operation of a motor vehicle, including statutes requiring motorists to maintain control of their vehicle, thereby excusing Mr. Buroker's alleged violations of any such statutes. It is also my opinion on the same basis that Mr. Buroker used ordinary and reasonable care under the circumstances presented in the instant case. It is further my opinion on the same basis that Mr. Buroker was not negligent in the operation of his tractor/trailer and that no negligent acts or failures to act on the part of Mr. Buroker proximately caused the motor vehicle collision in question. It is my opinion that the proximate cause of this crash was not a failure to control, but rather an unmanageable and unforeseen mechanical failure.

13. It is my opinion on the basis set forth in Paragraph No. 1 above that the collision in question was a "non-preventable accident."

*Id.* at ¶ 12-13.

{¶ 43} These examples from Lipian's affidavit that are sufficient to establish that a material question of genuine fact exists as to the cause of the accident and whether the accident was preventable. We find that the trial court erred in not considering Lipian's affidavit, which, as a matter of law, constituted expert testimony. Thus, the trial court denied Buroker the opportunity for a complete and fair hearing on his claims against Pratt (Jett Corr) and Pratt (Corrugated Logistics) and rendered the trial court's striking of Lipian's affidavit an abuse of discretion that amounted to prejudicial error.[4]

{¶ 44} Therefore, Buroker's second assignment of error is sustained.

### D. Third Assignment of Error

{¶ 45} Buroker argues the trial court committed reversible error when it granted appellees' motions for summary judgment and found in favor of appellees on the issue of liability.

{¶ 46} The trial court granted Snyder and Turmoil's motion for summary judgment in accordance with the controlling statute and case law, stating:

> In Ohio, a motor carrier is not liable for death, injury or loss caused by a motor vehicle not owned by the motor carrier or caused by an operator not employed by the motor carrier, unless the motor vehicle is being operated pursuant to a valid lease agreement. (R.C. 2307.34(C)[.]) Placard liability, or the proposition that liability for the loss runs with the placard displayed on the truck, is well established in Ohio. *See, e.g., Cincinnati Ins. Co. v. Haack*, 12 Ohio App.3d 183, 708 N.E.2d 214 (2nd Dist. 1997). In the instant case, there is no lease agreement, or any written agreement alleged between [Buroker] and Snyder and/or Turmoil Trucking. The court finds there is no genuine issue of material fact. On May 26, 2016, [Buroker] was driving a truck that he owned, and was displaying the Buroker Trucking DOT placard. For these reasons, [Buroker's] claims fail as a matter of law, and [Snyder and Turmoil Trucking's] Motion for Summary Judgment is GRANTED.

(Emphasis sic.) (Decision & Entry at 8-9.)

---

[4] "A trial court's ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent of abuse of discretion. *Scott v. Yates*, 71 Ohio St.3d 219, 221 (1994). An appellate court's standard of review for reviewing a trial court's ruling to admit or exclude evidence is a review based on whether the trial court committed an abuse of discretion that amounted to prejudicial error. *Gordon v. Ohio State Univ.*, 10th Dist. No. 10AP-1058, 2011-Ohio-5057, ¶ 82, citing *State v. Yohey*, 3d Dist. No. 9-95-46 (Mar. 18, 1996), citing *State v. Graham*, 58 Ohio St.2d 350 (1979), and *State v. Lundy*, 41 Ohio App.3d 163 (1st Dist.1987)." *O'Brien v. Dept. of Transp.,* 10th Dist. 18AP-231, 2019-Ohio-724, ¶ 52.

{¶ 47} Based on our independent review of the record, we find that Snyder and Turmoil satisfied their initial burden for summary judgment, thereby shifting the burden to Buroker to set forth specific facts showing there is a genuine issue for trial. Buroker has not shown there is a genuine issue for trial as to this issue, and the trial court did not err in granting Snyder and Turmoil's motion for summary judgment as to Buroker's claims against them.

{¶ 48} Since, with respect to Buroker's second assignment of error, we have found that the trial court erred in granting summary judgment for Pratt (Jett Corr) and Pratt (Corrugated Logistics), we find that Buroker's third assignment of error is sustained in part and overruled in part.

## IV.  CONCLUSION

{¶ 49} Accordingly, based on the foregoing reasons, we overrule Buroker's first assignment of error, sustain his second assignment of error, and sustain in part and overrule in part his third assignment of error. Therefore, having affirmed in part and reversed in part the judgment of the Franklin County Court of Common Pleas, this cause is remanded for a trial held between the remaining parties consistent with this decision.

*Judgment affirmed in part; reversed in part;*
*and cause remanded for trial.*

BEATTY BLUNT, J., concurs.
NELSON, J., concurs in part and dissents in part.

NELSON, J., concurring in part and dissenting in part.

{¶ 50} I agree with the majority that the trial court did not err in striking Mr. Buroker's affidavit, which he submitted to thwart summary judgment and which contained significant unexplained inconsistencies with his earlier deposition testimony. And I agree with the majority's affirmance of summary judgment for Mr. Snyder and Turmoil Trucking, because Mr. Buroker has not pointed to any specific facts showing that there is a genuine issue that could make them liable in this case. But I part company with the majority at its reversal of summary judgment for the Pratt entities:  Because I would affirm the trial court's grant of summary judgment in full, I respectfully dissent in part from the panel's decision.

{¶ 51} Contrary, perhaps, to what might be read as the majority's suggestion that Mr. "Buroker's theory of liability is that an employee at Pratt Industries' Springfield facility had failed to lock the pins in the rear tandem axle of the trailer before he hooked up to the trailer," *see supra* at ¶ 3, Mr. Buroker's briefing to us makes clear that he hinges his appeal with regard to Pratt on a claimed "negligent failure of * * * Pratt * * * to properly maintain and/or equip the semi-trailer * * * ." Appellant's Brief at 7; *see also id.* at 23 ("negligent failure to properly maintain and/or equip the semi-trailer"), 27 ("equipment defects and deficiencies of the Pratt shipper's trailer, which were latent and concealed and could not be reasonably discerned by ordinary observation"). It is true that Mr. Buroker explained his suit against Mr. Snyder (who is with Turmoil Trucking, not Pratt) as motivated by the view that "somebody" (other than himself, apparently) "is responsible for pinning those trailer tandems," Buroker Dep. at 117-18, and that Mr. Buroker acknowledged that (consequently?) he as the truck driver/carrier had not looked at the position of the locking pins for the tandem trailer axles before he began his drive, *id.* at 62. But his theory with regard to Pratt is based on his view that the trailer was not properly maintained or equipped, and that he could not have discovered that the locking mechanism was not engaged (if, indeed, that was the problem).

{¶ 52} As support for that theory, Mr. Buroker points only to the affidavit of accident reconstructionist Henry Lipian, which after asserting that "[t]he trailer tandem axle/locking pin/slider rail assembly at issue was reportedly fixed in the same rear-most position for the approximate six (6) years the trailer had been in service," then speculated that the assembly "was probably corroded and stuck in the same forward-most position from approximately six (6) years of non-use * * * ." *Compare* Lipian Affidavit at ¶ 4 *with id.* at ¶ 5. Given the "rear-most"/"forward-most" dichotomy, I am not sure whether Mr. Lipian believes that the assembly was "corroded" into a locked position over six years before somehow breaking free (despite the supposed corrosion?), or that it operated in a disengaged or some sort of almost-engaged position during six long years of non-adjustment. But whatever his view, his affidavit cited to no evidence or even any passing mention elsewhere in the record of such "corro[sion]" and resultant sticking. I find none.

{¶ 53} What I do find is the affidavit of Brian Perry from General Blitz Mobile Services, Inc., a 30-year veteran mechanic and inspector of commercial motor vehicles who

attested to his yearly inspection of the trailer and who testified that it passed all of the inspection items as recently as March 11, 2016 (some two and a half months before the accident). He identified and appended to his affidavit that March 11, 2016 inspection report certifying as "OK" (as opposed to "Needs Repair") the condition of the trailer's "Adjustable Axle Assemblies (Sliding Subframes)," and which when prompted to "List any other condition(s) which may prevent safe operation of this vehicle," lists "NOTHING AT THIS TIME." Perry Affidavit at ¶ 2-5 and March 11, 2016 attachment (emphasis in original). That is not evidence of corrosion.

**{¶ 54}** As the majority decision recites, " '[a]n expert's affidavit may not set forth conclusory statements without [sufficient] supporting facts,' " *see supra* at ¶ 35, quoting *Beattie v. McCoy*, 10th Dist. No. C-17019, 2018-Ohio-2535, ¶ 26, and those supporting facts must either be perceived directly by the expert or admissible from the record of the proceedings, *see supra* at ¶ 37 citing Evid.R. 703. Mr. Lipian took great pains in his affidavit to specify, repeatedly (and at least with regard to the view that the assembly was "probably" stuck in the "forward-most position," if not for the view that it was stuck in the "rear-most position") that his opinions were advanced "on the basis set forth in Paragraph No. 1 above." Lipian Affidavit at ¶ 5 (also referring to "the same basis"), ¶ 6 (same), ¶ 7 (same); *see also id.* at ¶ 8-13 (all using "on the basis set forth in Paragraph No. 1 above" formulation). Paragraph number 1 of his affidavit cited that basis as his reconstruction investigation as informed by his education, training, and experience, information as reflected in the state highway police report, photographs from the crash site, and "eyewitness testimony." But he specified no particular facts showing that the locking mechanism was "corroded," nor did he opine that it was likely to have developed such a defect between the time of the March 2016 inspection and the May accident.

**{¶ 55}** Again, Mr. Buroker's own testimony does not aid Mr. Lipian in this regard. He made no mental note of the position of the assembly latch handle, but simply checked lights and tires while not even testing the brakes, let alone noting the position of the assembly locking device. Buroker Dep. at 113, 107-08, 62. (I should think we would want drivers of big tractor trailers to inspect their assembly locking mechanism before they head out on the highway. And indeed, that seems to be the standard. *Compare* Ohio Adm.Code 4901:2-5-03(A), (B) (adopting certain federal regulations including generally 49 CFR 390-

97 for application to motor carriers like Mr. Buroker who operate in intrastate commerce); 49 CFR 396.13 (before driving, the driver shall be satisfied that the vehicle is in safe operating condition); 49 CFR 393.207(b) ("adjustable axle assemblies shall not have locking pins * * * disengaged")).

{¶ 56} The trial court might have used better wording when it denied defendants' motion to strike Mr. Lipian's affidavit (a bottom-line decision that the affidavit's proponent, Mr. Buroker, cannot challenge). But reviewing the affidavit afresh, I find nothing in it that should have precluded the trial court from granting summary judgment to the Pratt entities, and I think Pratt was entitled to that judgment because Mr. Buroker failed to adduce evidence putting Pratt negligence at issue. Because the majority disagrees and reverses the summary judgment for Pratt, I respectfully dissent to that extent.

_____